SIMON ARON (State Bar No. 108183)
  saron@wrslawyers.com
JOHNNY WHITE (State Bar No. 269306)
  jwhite@wrslawyers.com
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
11400 West Olympic Boulevard, 9th Floor
Los Angeles, California 90064-1582
Telephone:      (310) 478-4100
Facsimile:      (310) 479-1422

Attorneys for Plaintiff, Fariba Cohen

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:13-bk-26483-NB |
| Saeed Cohen, | Chapter 11 |
|         Debtor. | Adv. Case No. |
| | |
| Fariba Cohen | **COMPLAINT FOR NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(4)** |
|         Plaintiff, | |
| v. | |
| Saeed Cohen | |
|         Defendant. | |

Plaintiff, Fariba Cohen ("Plaintiff"), by and through her counsel, as and for her complaint in this matter ("Complaint"), alleges as follows:

## JURISDICTION AND VENUE

1.      This adversary proceeding is brought in the Chapter 11 case of debtor, Saeed Cohen, Case No. 2:13-bk-26483-NB (the "Bankruptcy Case"). Subject to, and without prejudice to Plaintiff's pending motion for abstention filed in the Bankruptcy Case (Doc. #60), this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C §§ 157, 1334, and 11 U.S.C. § 523(a). Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises under and in connection with a case under Title 11 which is pending in this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## THE PARTIES

2.      Plaintiff is an individual who resides at 622 North Alpine Drive, Beverly Hills, CA 90210.

3.      Defendant Saeed Cohen (the "Debtor") is an individual who resides at 2959 N Beverly Glen Cir, Los Angeles, CA 90077.

4.      Plaintiff and the Debtor are married, but parties to a pending dissolution of marriage proceeding in Los Angeles Superior Court, Case No. BD 495 060 (the "Divorce Proceeding").

## FACTUAL ALLEGATIONS

5.      Plaintiff hereby incorporates by reference the factual allegations contained in her *Motion re Breach of Fiduciary Duty, for an Accounting, and for Sanctions against Saeed Cohen and his Attorney of Record* and the papers filed in support thereof in the Divorce Proceeding, true and correct copies of which (without exhibits) are attached hereto as Exhibit 1 (the "Fiduciary Duty Motion").

6.      Pursuant to multiple provisions of the California Family Code, including, without limitation, §§ 721, 1100, and 2100 *et seq.*, Debtor owed fiduciary duties to Plaintiff with respect to his management and control of community assets and liabilities both during the Debtor's marriage to Plaintiff and after their separation.

7.      As set forth more fully in the Fiduciary Duty Motion, Debtor has breached his fiduciary duties to Plaintiff on multiple occasions during their marriage and after their separation, which breaches have included, without limitation, acts of fraud and defalcation, as well as potential damages caused by the Debtor's actions in willful disregard for the rights and interests of Plaintiff.

8.      Plaintiff further incorporates by this reference, to the extent relevant to this adversary proceeding, any factual allegations that she has made, or will make, against the Debtor in the course of the Divorce Proceeding.  Plaintiff also incorporates by this reference, to the extent relevant to this adversary proceeding, any factual allegations that she has made against the Debtor in any filings in the Bankruptcy Case.  It is Plaintiff's intention to fully litigate pursuant to 11 U.S.C. § 523(a)(4) the non-dischargeability of any debt that Debtor owes,  either to Plaintiff separately or to the community estate, which has arisen due to Debtor's larceny, embezzlement, fraud, or defalcation in breach of his fiduciary duties, both  during their marriage and subsequent separation, and to reserve all of Plaintiff's rights regarding same to the extent such claims are not included in 11 U.S.C. §§ 523(a)(5) and (15).

### FIRST CAUSE OF ACTION

### (Fraud and Defalcation While Acting in a Fiduciary Capacity)

9.      Plaintiff incorporates herein the preceding paragraphs of this Complaint as if fully set forth herein.

10.      During their marriage and after their separation, Debtor owed fiduciary duties to Plaintiff pursuant to California law.

11.      Throughout their marriage and after their separation, Debtor misappropriated community property for his own personal benefit in violation of his fiduciary duties to Plaintiff, as more fully described in the Fiduciary Duty Motion, Plaintiff's court filings in the Divorce Proceeding, and Plaintiff's filings in the Bankruptcy Case.

12.      Throughout their marriage and after their separation, Debtor defrauded Plaintiff and the community estate for his own personal benefit in violation of his fiduciary duties to Plaintiff, as more fully described in the Fiduciary Duty Motion, Plaintiff's court filings in the

1   Divorce Proceeding, and Plaintiff's filings in the Bankruptcy Case.

2       13.    At all times, Debtor acted in bad faith and with actual knowledge of, or gross

3   recklessness towards, the improper nature of his fiduciary behavior.

4       14.    But for the Debtor's conduct, the value of the property that Debtor defalcated and

5   fraudulently misappropriated could have been used to satisfy the value of Plaintiff's claims

6   against the Debtor, and/or her claims against the community estate.

7       15.    By reason of the foregoing, the Debtor is indebted to Plaintiff in an amount to be

8   determined at trial but in no event less than $50,000,000.00.

9       **WHEREFORE**, Plaintiff prays for a judgment as follows:

10      On the First Cause of Action against Saeed Cohen:

11      1)    For damages in the sum of at least $50,000,000.00;

12      2)    For an award of punitive damages;

13      3)    For prejudgment interest;

14      4)    For costs, including attorneys' fees; and

15      5)    For such other and further relief as the Court deems just and proper.

16  DATED: September 23, 2013            WOLF, RIFKIN, SHAPIRO,
                                        SCHULMAN & RABKIN, LLP
17

18

19                                      By:    ___/s/ Simon Aron_____
                                               SIMON ARON
20                                      Attorneys for Plaintiff, Fariba Cohen

21

22

23

24

25

26

27

28

# Exhibit "1"

**FL-301**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
STEPHEN A. KOLODNY, SBN 38026
JEFF M. STURMAN, SBN 177695
KOLODNY & ANTEAU
9100 Wilshire Blvd. 9-W
Beverly Hills, CA 90212-3425
TELEPHONE NO.: 310-271-5533    FAX NO. (Optional): 310-271-3918
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): FARIBA COHEN

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS: 111 NORTH HILL STREET
CITY AND ZIP CODE: LOS ANGELES, CA 90012
BRANCH NAME: CENTRAL DISTRICT

PETITIONER/PLAINTIFF: FARIBA COHEN

RESPONDENT/DEFENDANT: SAEED COHEN

FOR COURT USE ONLY

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 16 2011

John A. Clarke, Executive Officer/ Clerk
By: Suzette L. Stein, Deputy

| NOTICE OF MOTION | | CASE NUMBER: |
|---|---|---|
| [ ] Child Custody | [ ] MODIFICATION [ ] Visitation [ ] Injunctive Order | BD 495 060 |
| [ ] Child Support | [ ] Spousal Support [X] Other (specify): | |
| [ ] Attorney Fees and Costs | Breach of Fiduciary Duty and | |

Sanctions Against Respondent and Accounting

1. TO (name): Respondent, Saeed Cohen, and his attorney of record
2. A hearing on this motion for the relief requested in the attached application will be held as follows:

| a. Date: 1 17 12 | Time: 8:45 | [X] Dept.: 60 | [ ] Rm.: |
|---|---|---|---|

b. Address of court  [X] same as noted above  [ ] other (specify):

3. Supporting attachments:
   a. [ ] Completed Application for Order and Supporting Declaration (form FL-310) and a **blank** Responsive Declaration (form FL-320)
   b. [ ] Completed Income and Expense Declaration (form FL-150) and a **blank** Income and Expense Declaration
   c. [ ] Completed Financial Statement (Simplified) (form FL-155) and a **blank** Financial Statement (Simplified)
   d. [ ] Completed Property Declaration (form FL-160) and a **blank** Property Declaration
   e. [X] Points and authorities
   f. [X] Other (specify): Declarations of Fariba Cohen, Jeff M. Sturman, James A. Dooley, * *William A. Duerksen, CPA/ABV

Date: November 16, 2011

Kolodny & Anteau by Jeff M. Sturman
(TYPE OR PRINT NAME)                    (SIGNATURE)

**ORDER**

4. [ ] Time for [ ] service [ ] hearing is shortened. Service must be on or before (date):
5. Any responsive declaration must be served on or before (date):
6. If child custody or visitation is an issue in this proceeding, Family Code section 3170 requires mediation before or concurrently with the hearing listed above. The parties are ordered to attend orientation and mandatory custody services as follows:

Date: _____    _____
                                   JUDICIAL OFFICER

**NOTICE:** If you have children from this relationship, the court is required to order payment of child support based on the incomes of both parents. The amount of child support can be large. It normally continues until the child is 18. You should supply the court with information about your finances. Otherwise, the child support order will be based on the information supplied by the other parent.

You do not have to pay any fee to file declarations in response to this Notice of Motion (including a completed Income and Expense Declaration (form FL-150) or Financial Statement (Simplified) (form FL-155) that will show your finances). In the absence of an order shortening time, the original of the responsive declaration must be filed with the court and a copy served on the other party at least nine court days before the hearing date. Add five calendar days if you serve by mail within California. (See Code of Civil Procedure 1005 for other situations.) To determine court and calendar days, go to www.courtinfo.ca.gov/selfhelp/courtcalendars/.

Form Adopted for Mandatory Use
Judicial Council of California
FL-301 [Rev. January 1, 2007]

NOTICE OF MOTION

Legal Solutions Plus

Page 1 of 2
Government Code, § 26826

| PETITIONER/PLAINTIFF: FARIBA COHEN | CASE NUMBER: |
|---|---|
| RESPONDENT/DEFENDANT: SAEED COHEN | BD 495 060 |

7. PROOF OF SERVICE BY MAIL

  a. I am at least age 18, **not a party to this action,** and am a resident or employed in the county where the mailing took place. My residence or business address is:

  b. I served copies of the following documents by enclosing them in a sealed envelope with postage fully prepaid, depositing them in the United States mail as follows:

    (1) Papers served:
      (a) *Notice of Motion* and a completed *Application for Order and Supporting Declaration* (form FL-310) **and a blank** *Responsive Declaration* (form FL-320)
      (b) ☐ Completed *Income and Expense Declaration* (form FL-150) and a blank *Income and Expense Declaration*
      (c) ☐ Completed *Financial Statement (Simplified)* (form FL-155) and a blank *Financial Statement (Simplified)*
      (d) ☐ Completed *Property Declaration* (form FL-160) **and a blank** *Property Declaration*
      (e) ☐ Points and authorities
      (f) Other *(specify):*

    (2) Manner of service:
      (a) Date of deposit:
      (b) Place of deposit *(city and state):*
      (c) Addressed as follows:

  c. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____   ▶   _____
         (TYPE OR PRINT NAME)                  (SIGNATURE OF DECLARANT)



**Request for Accommodations**
Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the proceeding. Contact the clerk's office or go to *www.courtinfo.ca.gov/forms* for *Request for Accommodations by Persons With Disabilities and Response* (Form MC-410). (Civil Code, § 54.8.)

FL-310

| PETITIONER/PLAINTIFF: FARIBA COHEN | CASE NUMBER: |
|---|---|
| RESPONDENT/DEFENDANT: SAEED COHEN | BD 495 060 |

## APPLICATION FOR ORDER AND SUPPORTING DECLARATION
### —THIS IS NOT AN ORDER—

[X] Petitioner    [ ] Respondent    [ ] Claimant    requests the following orders:

1. [ ] CHILD CUSTODY    [ ] To be ordered pending the hearing
   a. <u>Child's name and age</u>    b. <u>Legal custody to</u> *(name of person who*    c. <u>Physical custody to</u> *(name of*
                *makes decisions about health, education, etc.)*    *person with whom child will live.)*

   d. [ ] Modify existing order
      (1) filed on *(date):*
      (2) ordering *(specify):*

   e. [ ] As requested in form    [ ] FL-311    [ ] FL-312    [ ] FL-341(C)    [ ] FL-341(D)    [ ] FL-341(E)

2. [ ] CHILD VISITATION    [ ] To be ordered pending the hearing

   a. As requested in:    (1) [ ] Attachment 2a    (2) [ ] Form FL-311    (3) [ ] Other *(specify):*

   b. [ ] Modify existing order
      (1) filed on *(date):*
      (2) ordering *(specify):*

   c. [ ] One or more domestic violence restraining/protective orders are now in effect. *(Attach a copy of the orders if you have one.)* The orders are from the following court or courts *(specify county and state):*

      (1) [ ] Criminal: County/state:       (3) [ ] Juvenile: County/state:
          Case No. *(if known):*           Case No. *(if known):*
      (2) [ ] Family: County/state:       (4) [ ] Other: County/state:
          Case No. *(if known):*           Case No. *(if known):*

3. [ ] CHILD SUPPORT *(An earnings assignment order may be issued.)*
   a. <u>Child's name and age</u>    b. <u>Monthly amount requested</u> (if not by guideline)
                                $

   c. [ ] Modify existing order
      (1) filed on *(date):*
      (2) ordering *(specify):*

4. [ ] SPOUSAL OR PARTNER SUPPORT *(An earnings assignment order may be issued.)*
   a. [ ] Amount requested *(monthly):* $    c. [ ] Modify existing order
   b. [ ] Terminate existing order       (1) filed on *(date):*
      (1) filed on *(date):*       (2) ordering *(specify):*
      (2) ordering *(specify):*

> **NOTE: To obtain domestic violence restraining orders, you must use the forms *Request for Order (Domestic Violence Prevention)* (form DV-100), *Temporary Restraining Order (Domestic Violence Prevention)* (form DV-110), and *Notice of Court Hearing (Domestic Violence Prevention)* (form DV-109).**

Form Adopted for Mandatory Use
Judicial Council of California
FL-310 [Rev. July 1, 2011]

APPLICATION FOR ORDER AND SUPPORTING DECLARATION

Family Code, §§ 2045, 2107, 6224,
6226, 6320–6326, 6380–6383

Legal
Solutions
℗ Plus

**FL-310**

| | |
|---|---|
| PETITIONER/PLAINTIFF: FARIBA COHEN | CASE NUMBER: |
| RESPONDENT/DEFENDANT: SAEED COHEN | BD 495 060 |

5. ☐ ATTORNEY FEES AND COSTS  a. ☐ Fees: $      b. ☐ Costs: $

6. ☐ PROPERTY RESTRAINT    ☐ **To be ordered pending the hearing**

  a. The ☐ petitioner ☐ respondent ☐ claimant is restrained from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, except in the usual course of business or for the necessities of life.

    ☐ The applicant will be notified at least five business days before any proposed extraordinary expenditures, and an accounting of such will be made to the court.

  b. ☐ Both parties are restrained and enjoined from cashing, borrowing against, canceling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage, including life, health, automobile, and disability, held for the benefit of the parties or their minor children.

  c. ☐ Neither party may incur any debts or liabilities for which the other may be held responsible, other than in the ordinary course of business or for the necessities of life.

7. ☐ PROPERTY CONTROL    ☐ **To be ordered pending the hearing**

  a. ☐ The petitioner ☐ respondent is given the exclusive temporary use, possession, and control of the following property that we own or are buying (specify):

  b. ☐ The petitioner ☐ respondent is ordered to make the following payments on liens and encumbrances coming due while the order is in effect:

| Debt | Amount of payment | Pay to |
|---|---|---|
| | | |

8. ☒ OTHER RELIEF (specify): That: (a) Respondent be ordered to pay a monetary sanction of $1 million to Petitioner pursuant to Family Code sections 271 and 2107; (b) Respondent be ordered to account for all transfers into and out of foreign bank accounts from January 2, 2010 to the present, and, (c) Respondent be ordered to disclose all payments of professional fees related *

9. ☐ I request that time for service of the Order to Show Cause and accompanying papers be shortened so that these documents may be served no less than (specify number):     days before the time set for the hearing. I need to have the order shortening time because of the facts specified in item 10 or the attached declaration.

10. ☐ FACTS IN SUPPORT of relief requested and change of circumstances for any modification are (specify):
    ☐ Contained in the attached declaration. (You may use Attached Declaration (form MC-031) for this purpose).
Declarations of Fariba Cohen, Jeff M. Sturman, James A. Dooley and William A. Duerksen, CPA/ABV

    **\*related to this case and the source of those payments.**
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: November 16, 2011

Fariba Cohen
      (TYPE OR PRINT NAME)                   ▶           (SIGNATURE OF APPLICANT)

# TABLE OF CONTENTS

I.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

II.   Fiduciary Duties In Family Law Cases . . . . . . . . . . . . . . . . . . . . . . .    4

    A.    Applicable *Family Code* Sections Setting Forth Fiduciary Duties . . . . . . .    4

    B.    Applicable Case Law Regarding Fiduciary Duties . . . . . . . . . . . . . . . . .    5

    C.    Applicable Statutes Regarding Sanctions And Remedies . . . . . . . . . . . .    8

III.  Background Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

IV.   Breaches of Fiduciary Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

    Breach of Fiduciary Duty Number 1 -

    Respondent's Failure To Disclose Transfers Between

    Foreign Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

    Breach of Fiduciary Duty Number 2 -

    Respondent's Failure To Immediately, Fully And

    Accurately Disclose Income In Connection With The

    August 2, 2010 Hearing Regarding Interim Support . . . . . . . . . . . . . . .    11

    Breach of Fiduciary Duty Number 3 -

    Respondent's Failure To Immediately, Fully And

    Accurately Disclose Material Facts And Information About

    Assets, Liabilities, Income And Expenses . . . . . . . . . . . . . . . . . . . . . .    12

    Breach of Fiduciary Duty Number 4 -

    Respondent's Failure To Immediately, Fully And

    Accurately Disclose That He Took About $815,000 Of

    Community Money To Pay His Year 2009 Tax Liability . . . . . . . . . . . .    14

    Breach of Fiduciary Duty Number 5 -

    Respondent's Failure To Give Petitioner "Equal Access" To

    The Books And Records of AMP Plus "Upon Request" . . . . . . . . . . . .    15

/////

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1    Breach of Fiduciary Duty Number 6 -

2    Respondent's Failure To Disclose Year 2010 Income

3    At The January 2011 Hearing Regarding Support ................. 16

4    Breach of Fiduciary Duty Number 7 -

5    Respondent's Failure To Disclose That He Paid

6    A Substantial Amount Of His Year 2010 Estimated Taxes

7    When The Court Ordered That Both Parties Could

8    Withdraw Community Funds For That Purpose ................... 17

9    Breach of Fiduciary Duty Number 8 -

10    Respondent's Failure To Disclose The

11    Source Of His Support Payments .......................... 18

12    Breach of Fiduciary Duty Number 9 -

13    Respondent's Failure To Disclose The Amount Of

14    Professional Fees That He Incurred And Paid ................... 20

15    Breach of Fiduciary Duty Number 10 -

16    Respondent's Failure To Disclose The

17    Documents Supporting The Adjustments Shown

18    On His Tax Accountant's Work Papers ....................... 21

19    V.   Conclusion ......................................... 23

20

21

22

23

24

25

26

27

28

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN                          CASE NO. BD 495 060
2011-11-16 Table of Contents.wpd  2011-11-16 12:58 JMS                PAGE 2
**TABLE OF CONTENTS**

1

## TABLE OF AUTHORITIES

2

3  <u>Statutes</u>

4  *Corporations Code* section 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

5  *Family Code* section 271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

6  *Family Code* section 721 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 6, 13, 15, 23

7  *Family Code* section 1100 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 4, 5, 6, 13, 15, 23

8  *Family Code* section 1101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

9  *Family Code* section 2100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 13

10 *Family Code* section 2102 . . . . . . . . . . . . . . . . . . . .  5, 10, 11, 14, 16, 18, 19, 20, 23

11 *Family Code* section 2107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

12

13 <u>Cases</u>

14 *Marriage of Brewer & Federici* (2001) 93 Cal.App.4th 1334 . . . . . . . . . . . . . . . . . . . . . .  6

15 *Marriage of Feldman* (2007) 153 Cal.App.4th 1470 . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

16 *Marriage of Geraci* (2006) 144 Cal.App.4th 1278 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

17 *Marriage of Margulis* (2011) 198 Cal.App.4th 277 . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

18 *Marriage of Rossi* (2001) 90 Cal.App.4th 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

19 *Marriage of Tharp* (2011) 188 Cal.App.4th 1295 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

20 *Schnabel v. Superior Court* (1993) 5 Cal.4th 704 . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

21

22

23

24

25

26

27

28

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Petitioner, Fariba Cohen, requests that the Court find that Respondent, Saeed Cohen, has breached his fiduciary duties by failing to disclose material facts and information concerning income, assets, debts, expenses, and professional fees. To deter Respondent from continuing to breach his fiduciary duties and to remedy some of his past breaches of fiduciary duty, Petitioner requests that Respondent be ordered to: (a) pay a monetary sanction of $1 million, (b) account for deposits into and transfers out of foreign bank accounts, and, (c) account for payments for attorneys' fees, other professional fees and costs.

As set forth in this Motion, Respondent's breaches of fiduciary include, but are not limited to, the following:

- In 2010, Respondent failed to disclose for several months that he transferred millions of dollars out of foreign accounts.

- On August 2, 2010, Respondent failed to disclose current financial information about the parties' community business, AMP Plus, causing the Court to make an interim support Order based on a year 2008 tax return that he knew or should have known under-reported the parties' income.

- On September 15, 2010, Respondent failed to disclose or produce documents concerning the "income, expenses and/or assets and liabilities of" AMP Plus even though those documents were requested by a document demand. Respondent produced those documents about a year later when he dumped about 1.2 million pages on Petitioner in response to a different document demand.

- In October 2010, Respondent failed to disclose that he took about $615,000 from a community property bank account and about $200,000 from the parties' community property business to pay his 2009 taxes.

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN                                        CASE NO. BD 495 060
2011-11-16 MPA - Mtn re BOFD Sanctions & Accounting(b).676.wpd  2011-08-22 10:29 jad          **PAGE 1**
**MEMORANDUM OF POINTS AND AUTHORITIES**

1    -    In December 2010, Respondent refused to give Petitioner "equal access" to

2    the books and records of AMP Plus, the parties' community business, "upon request" as

3    required by *Family Code* section 1100(e).

4    -    In January 2011, Respondent failed to disclose current financial information

5    about the parties' community business, AMP Plus, causing the Court to make a *pendente*

6    *lite* support Order based on a year 2009 tax return that he knew or should have known

7    under-reported the parties' income.

8    -    In January 2011, Respondent failed to cause his attorney to disclose that he

9    already paid $600,000 for year 2010 estimated taxes while his attorney argued in Court that

10   Respondent did not have the ability to pay estimated taxes and the amount of Respondent's

11   estimated tax liability had not been determined.

12   -    From mid-January 2011 through May 2011, Respondent failed to disclose that

13   he paid support from money held in foreign accounts. Before January 2011, Respondent

14   stated under penalty of perjury that the money in the foreign accounts could only be used

15   to pay taxes, penalties and interest.

16   -    In May 2011, Respondent filed an Income and Expense Declaration in which

17   he failed to disclose several hundred thousand dollars of professional fees that he paid to

18   his former Family Law attorneys, to his former forensic accountants and to his current

19   forensic accountants.

20   -    Since August 2011, Respondent has failed to disclose the documents, if any,

21   that he relied on when he had his tax accountant make about $47.7 million of adjustments

22   while preparing draft amended tax returns. Petitioner's attorney has informally requested

23   that information and has discovery was been propounded. Therefore, Petitioner cannot

24   determine whether the draft amended tax returns are accurate and she has not signed them.

25   As the Court already knows, Respondent has a long history of failing to disclose

26   income and assets on tax returns that he filed with the IRS and the FTB. Therefore, it should

27   come as no surprise that he has repeatedly failed to disclose material facts and information

28   to Petitioner.

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1        It should also not be surprising that Respondent's breaches of fiduciary duty have

2    prejudiced Petitioner. For example, when Respondent failed to disclose AMP Plus' income

3    at an August 2, 2010 hearing, the Court made an interim support Order based on a 2008 tax.

4    Several months later, Respondent produced amended tax returns for 2008 and 2009, as well

5    as a 2010 tax return. All of those tax returns show that AMP Plus' income was several

6    million dollars higher than original 2008 tax return that the Court used to make support

7    Orders on August 2, 2010, and that additional income is attributable to AMP Plus, the

8    community business that Respondent exclusively manages and controls. Therefore, if

9    Respondent had immediately, fully and accurately disclosed material facts and information

10    about AMP Plus finances, the support Orders would have been much higher.

11        To deter Respondent from committing additional breaches of fiduciary duty and to

12    remedy some of his past breaches of fiduciary duty, Petitioner requests: (a) that Respondent

13    be ordered to pay a monetary sanction pursuant to *Family Code* sections 271 and

14    2107(c), (b) that Respondent be ordered to account for his use of money held in foreign

15    accounts because Petitioner does not know the source of his support payments and his

16    payments for professional fees, and, (c) that Respondent be ordered to account for the

17    professional fees that he has incurred and paid.

18        Importantly, the breaches of fiduciary duty set forth in this Motion are not

19    Respondent's only breaches of fiduciary duty, and, at trial, Petitioner intends to ask the Court

20    to find that Respondent committed additional breaches of fiduciary duty. However, it is

21    important to deal with some of the discrete breaches of fiduciary duty that Respondent has

22    committed now to deter him from continuing to engage in this kind of conduct. *See Marriage*

23    *of Feldman* (2007) 153 Cal.App.4th 1470, 1498 ("As a matter of logic, to promote

24    cooperation a trial court must be able to apply sanctions during the course of the litigation

25    when the uncooperative conduct arises in order to encourage better behavior as the litigation

26    progresses.")

27

28

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN                           CASE NO. BD 495 060

2011-11-16 MPA - Mtn re BOFD Sanctions & Accounting(b).676.wpd  2011-08-22 10:29 jad    **PAGE 3**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## II.

## FIDUCIARY DUTIES IN FAMILY LAW CASES

A.  **Applicable *Family Code* Sections Setting Forth Fiduciary Duties**

*Family Code* section 721 states, in pertinent part ,that::

> (b) Except as provided in Sections 143, 144, 146, 16040, and 16047 of the Probate Code, **in transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other.** This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections 16403, 16404, and 16503 of the Corporations Code, including, but not limited to, the following:

> (1) **Providing each spouse access at all times to any books kept regarding a transaction for the purposes of inspection and copying.** [Emphasis in bold added by the undersigned]

> . . . .

*Family Code* section 1100(e) states as follows:

> (e) Each spouse shall act with respect to the other spouse in the management and control of the community assets and liabilities in accordance with the general rules governing fiduciary relationships which control the actions of persons having relationships of personal confidence as specified in Section 721, until such time as the assets and liabilities have been divided by the parties or by a court. **This duty includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and debts, upon request.** [Emphasis in bold added by the undersigned]

/////

/////

/////

/////

/////

<div style="margin-left:2em;">

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

</div>

*Family Code* section 2100 states that it is California's "public policy" to promote "a full and accurate disclosure of all assets and liabilities in which one or both parties have or may have an interest. . . ." Additionally, both parties have a "continuing duty to immediately, fully and accurately update and augment" their disclosures to the extent that there have been "material changes." *Family Code* section 2102 makes these disclosure obligations more specific by stating that:

> (a) From the date of separation to the date of the distribution of the community or quasi-community asset or liability in question, each party is subject to the standards provided in Section 721, as to all activities that affect the assets and liabilities of the other party, including, but not limited to, the following activities:
>
> (1) The accurate and complete disclosure of all assets and liabilities in which the party has or may have an interest or obligation and all current earnings, accumulations, and expenses, including an immediate, full, and accurate update or augmentation to the extent there have been any material changes.
>
> . . . .
>
> (c) From the date of separation to the date of a valid, enforceable, and binding resolution of all issues relating to child or spousal support and professional fees, each party is subject to the standards provided in Section 721 as to all issues relating to the support and fees, including immediate, full, and accurate disclosure of all material facts and information regarding the income or expenses of the party.

**B. Applicable Case Law Regarding Fiduciary Duties**

Almost 20 years ago, the California Supreme Court quoted the predecessor of *Family Code* section 1100(e) and then stated that:

> [That statute] makes clear that each spouse is entitled to complete disclosure of all relevant information to allow an independent review of the marital property and financial status of the spouses. [Citations omitted] Whatever right [husband] has to inspect records of the corporation, [wife] also has, either indirectly through Terry, or directly, as in this case, by means of third party discovery. It follows that if [husband] has a right to inspect any corporate records, he cannot, consistent with his fiduciary duty, refuse to cooperate in obtaining for [wife] those records that are relevant to this proceeding. . . .

*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 715.

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1    Later cases, have affirmed trial court findings that a spouse breaches his or her

2    fiduciary duties by failing to accurately declare income (*Marriage of Geraci* (2006)

3    144 Cal.App.4th 1278, 1294-1295), by failing to disclose the existence of assets (*Marriage*

4    *of Rossi* (2001) 90 Cal.App.4th 34; *Marriage of Feldman* (2007) 153 Cal.App.4th 1470), and

5    by failing to disclose information about the value of assets (*Marriage of Brewer & Federici*

6    (2001) 93 Cal.App.4th 1334).

7    In a very recent case, *Marriage of Margulis* (2011) 198 Cal.App.4th 277, the Court of

8    Appeal held that when a non-managing spouse presents prima facie proof that community

9    assets of a certain value have disappeared, the managing spouse has the burden of proof

10    to account for those missing assets.  In reaching that conclusion, the Court of Appeal relied

11    on principles that apply when deciding whether to shift the burden of proof, as well as the

12    fiduciary duties that apply in Family Law cases.

13    With regard to fiduciary duties, the opinion quotes and discusses *Family Code*

14    sections 721, 1100 and 2100 et seq.  It then states as follows:

15    Taken together, these Family Code provisions impose on a
managing spouse affirmative, wide-ranging duties to disclose

16    and account for the existence, valuation, and disposition of all
community assets from the date of separation through final

17    property division. These statutes obligate a managing spouse to
disclose soon after separation all the property that belongs or

18    might belong to the community and its value, and then to
account for the management of that property, revealing any

19    material changes in the community estate, such as the transfer
or loss of assets. This strict transparency both discourages

20    unfair dealing and empowers the nonmanaging spouse to
remedy any breach of fiduciary duty by giving that spouse the

21    "information concerning the [community's] business" needed for
the exercise of his or her rights (*Corp. Code*, 16403, subd. (c)(1);

22    721, subd. (b)), including the right to pursue a claim for
"impairment to" his or her interest in the community estate (1101,

23    subds.(a), (g) & (h)). And most importantly for present purposes,
in a trial where community assets are missing, these statutory

24    duties of disclosure and accounting serve to shift the burden of
proof on missing assets to the managing spouse.

25

26    We find support for this crucial shift of the burden of proof in the
recurring mandate, running throughout the statutory scheme,

27    that the managing spouse must furnish information to the other
spouse concerning the community property. For example,

28    various statutes require the managing spouse to make "full and
accurate disclosure of all [community] assets" (2100, subd. (c))
and "of all material facts ... regarding the existence,

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533  Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN                                    CASE NO. BD 495 060

2011-11-16 MPA - Mtn re BOFD Sanctions & Accounting(b).676.wpd  2011-08-22 10:29 jad        **PAGE 6**

**MEMORANDUM OF POINTS AND AUTHORITIES**

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1  characterization, and valuation" of those assets (1100, subd.
2  (e)), and to "immediately, fully and accurately update and
   augment" that disclosure (2100, subd. (c)). Collectively, these
3  provisions impose a *sua sponte* duty on the managing spouse
   to advise the nonmanaging spouse of the existence and value
4  of the community property. (See *Feldman, supra,* 153
   Cal.App.4th at p. 1488, 64 Cal.Rptr.3d 29 ["Aaron had a fiduciary
5  duty to disclose the existence of the 401(k) account ... in the first
   place without prodding from Elena"]; *In re Marriage of Brewer &
6  Federici* (2001) 93 Cal.App.4th 1334, 1347–1348, 113
   Cal.Rptr.2d 849 [managing spouse had affirmative duty to
7  acquire and disclose information concerning value of community
   pension plan].)

8  These Family Code statutes impose a similar sua sponte duty on
   the managing spouse to furnish information concerning the
9  disposition of community assets. For example, section 721
   requires a spouse to produce "full information of all things
10 affecting any transaction which concerns the community
   property" (721, subd. (b)(2)), to "[a]ccount[ ] to the [other]
11 spouse, and hold [ ] as a trustee, any benefit or profit derived
   from any transaction ... which concerns the community property"
12 ( 721, subd. (b)(3)), and to furnish "[w]ithout demand, any
   information concerning the [community's] business" that the
13 other spouse requires for the exercise of his or her rights
   (*Corp.Code*, 16403, subd. (c)(1), italics added; 721, subd. (b)).
14 (See *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 296,
   39 Cal.Rptr.2d 673 (*Haines*) [ 721 is a statute "of mutual
15 accountability, requiring each spouse to show his or her conduct
   in connection with an interspousal transaction conformed to the
16 legal standard" applicable to fiduciaries].)

17 These substantial sua sponte duties of disclosure and
   accounting bind the managing spouse until the community
18 property is divided. (2100, subd. (c); 2102, subd. (a)(1).) It
   follows, then, that these statutory duties can play a significant
19 role at a trial to divide the property. In a situation like the present
   case, where the nonmanaging spouse makes a prima facie
20 showing that community assets are missing, that showing
   implicates the managing spouse's duty to "update and augment"
21 disclosure as to "any material changes" in the community
   property. (2100, subd. (c).) In fact, section 2100 states that the
22 purpose of this continuing disclosure requirement is "so that ...
   at the time of trial on these issues, each party will have a full and
23 complete knowledge of the relevant underlying facts." (2100,
   subd. (c).) That statutory purpose is served, and the duty to
24 account enforced, by placing the burden of proof to account for
   missing assets on the managing spouse.
25

26 *Margulis, supra* at 1270-1272; *see also Marriage of Tharp* (2011) 188 Cal.App.4th 1295

27 (failure to disclose assets and liabilities, as well as false representation about the existence

28 of a prenuptial agreement were breaches of fiduciary duty).

## C.   Applicable Statutes Regarding Sanctions And Remedies

*Family Code* section 271(a) states as follows:

> (a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award.

*Family Code* section 2107(c) states as follows:

> (c) If a party fails to comply with any provision of this chapter [regarding the disclosure of material facts and information], the court shall, in addition to any other remedy provided by law, impose money sanctions against the noncomplying party. Sanctions shall be in an amount sufficient to deter repetition of the conduct or comparable conduct, and shall include reasonable attorney's fees, costs incurred, or both, unless the court finds that the noncomplying party acted with substantial justification or that other circumstances make the imposition of the sanction unjust.

*Family Code* section 1101(b) states as follows:

> (b) A court may order an accounting of the property and obligations of the parties to a marriage and may determine the rights of ownership in, the beneficial enjoyment of, or access to, community property, and the classification of all property of the parties to a marriage.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

## III.

## BACKGROUND FACTS

The parties were married in November 19, 1988, and they had three children during marriage.  ¶ 3, F. Cohen dec.   Their business, AMP Plus, Inc., dba Elco Lighting ("AMP Plus") was formed during marriage.   ¶ 3, F. Cohen dec.  Respondent exclusively managed and controlled AMP Plus during marriage through the present date. ¶ 4, F. Cohen dec. and Exhibits "A" and "B".

On October 28, 2008, Petitioner filed the Petition for Dissolution of Marriage, and Respondent was served with the Petition.

In 2009, the parties agreed that there would be no litigation while they attempted a reconciliation.   ¶ 7, F. Cohen dec.

In about February 2010, Respondent stopped depositing money into a joint Wells Fargo account that the parties' used to pay their living expenses.  To protect herself and the parties' children, Petitioner transferred $800,000 out of an account in the name of Lighton Properties, LLC, into an account in her name.  Respondent then sought and obtained an Order requiring the return of the money to the Lighton Properties account and Petitioner complied with that Order.  ¶ 9, F. Cohen dec. The Court also prohibited either party from taking any of that money without a written agreement of the parties or a Court Order. See Tab A, Petitioner's Request for Judicial Notice ("Pet. RJN").

On July 8, 2010, Petitioner filed an Order to Show Cause for child support, spousal support, attorney's fees and costs, and other relief which was set for hearing on August 2, 2010 ("Petitioner's OSC").  Exhibit "C".

On July 16, 2010, Respondent made an *ex parte* application, requesting that the August 2, 2010 hearing on Petitioner's OSC be continued.  Exhibit "D".  However, the Court ordered that it would make interim support Orders on August 2, 2010, pending a later hearing on Petitioner's OSC which would take place after the parties' responded to outstanding discovery. Additionally, Respondent was ordered to file a complete Income and Expense Declaration before the August 2, 2010 hearing.  Tab "B", Pet. RJN.

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN                                    CASE NO. BD 495 060
2011-11-16 MPA - Mtn re BOFD Sanctions & Accounting(b).676.wpd  2011-08-22 10:29 jad              PAGE 9
MEMORANDUM OF POINTS AND AUTHORITIES

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1    On July 22, 2010, Respondent filed a Responsive Declaration and an Income and

2  Expense Declaration form.    However, the Income and Expense Declaration form that

3  Respondent filed contained a disclaimer and he did not provide financial information about

4  AMP Plus. However, Respondent said that he was going to voluntarily disclose unreported

5  income to the IRS and/or the FTB.  Exhibit "E".

6    On July 28, 2010, Petitioner's attorneys received a letter from Respondent's attorney

7  which listed 11 foreign accounts and stated that Petitioner was a signatory on seven of those

8  accounts.  *See* Exhibit "F".  However, Petitioner did not know about almost all of these

9  accounts.  ¶ 15, F. Cohen dec.

10    On November 5, 2010, Petitioner served her Declaration of Disclosure. Exhibit "EEE".

11

12                                   **IV.**

13                        **BREACHES OF FIDUCIARY DUTY**

14    **Breach of Fiduciary Duty Number 1 - Respondent's Failure To Disclose**

15    **Transfers Between Foreign Accounts**

16    On September 2, 2010, Respondent's attorneys sent a letter which said that

17  Respondent transferred about $8.3 million from certain foreign bank accounts to other

18  foreign bank accounts.[1]  *See* Exhibit "G".  However, bank statements that Respondent

19  produced in September 2010, show that about $6.2 million of that money was transferred

20  in  March  2010,  about  six  months  before  Respondent's  attorneys  sent  their

21  September 2, 2010 letter disclosing them. Exhibit "H" and Exhibit "I". Petitioner did not know

22  about those transfers before she received the September 2, 2010 letter.  *See* ¶ 17, F. Cohen

23  dec.  Consequently, Respondent failed to disclose that he transferred millions of dollars out

24  of foreign bank accounts for several months.

25    Pursuant to *Family Code* section 2102(a)(1), Respondent's failure to immediately, fully

26  and accurately disclose his transfers of millions of dollars was a breach of fiduciary duty.

27  ————————————

28    [1]The new bank accounts identified in the September 2, 2010 letter from Respondent's
attorneys were with EFG.  Those EFG accounts were identified in the July 28, 2010 letter
from Respondent's attorneys.  *See* Exhibit "F".

**Breach of Fiduciary Duty Number 2 - Respondent's Failure To Immediately, Fully And Accurately Disclose Income In Connection With The August 2, 2010 Hearing Regarding Interim Support**

On August 2, 2010, the Court heard Petitioner's OSC for the purpose of making an interim support Order pending a later hearing. However, the Income and Expense Declaration that Respondent filed did not disclose AMP Plus' income and it contained a disclaimer about the accuracy of the information that it did disclose. Consequently, the Court found that Respondent had not filed an Income and Expense Declaration, and the Court made an interim support Order based on more than one-year old 2008 tax return. *See* Tab "C" Pet. RJN and Exhibit "E".

That 2008 individual income tax return showed gross income of about $2.2 million which included AMP Plus' ordinary business income because it is a Subchapter S corporation. Exhibits "J" and "K". Based on the parties' 2008 tax return, the Court ordered Respondent to pay $14,649 per month of child support and $36,398 per month of spousal support. *See* Tab "C" to Pet. RJN.

In November 2011, Respondent testified at his deposition that he caused the inventory to be incorrectly reported on AMP Plus' 2008 tax return to reduce his tax liability. Exhibit "L". Petitioner then filed a Supplement to her Order to Show Cause which quoted Respondent's deposition testimony. *See* Exhibit "M". About a week later, Respondent changed his deposition testimony. *See* Exhibit "N".

In May 2011[2], Respondent delivered draft amended individual income tax returns for 2008, reporting that gross income had increased to about $11.1 million, with about $8 million of the approximately $9 million increase attributable to the increased profit reported on AMP Plus' amended tax return. Exhibits "O" and "P". Respondent also delivered an amended corporate tax return for 2009 which showed that AMP Plus' income for that year was about $5.3 million. Exhibit "Q".

---

[2]Respondent's attorneys also draft amended tax returns in late March 2011, and early April 2011. However, the May 2011 draft amended returns were somewhat different and are apparently the versions that Respondent considers to be final.

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1    Going back to August 2, 2010, Respondent clearly knew that the tax returns that he

2  caused to be filed were inaccurate since he stated on the Income and Expense Declaration

3  that he filed that he was going to disclose unreported income and/or assets to the IRS and

4  the FTB.  See Exhibit "E".  However, Respondent did not: (a) disclose that the 2008 tax

5  return was inaccurate, (b) accurately disclose income for 2008, or, (c) disclose year 2009

6  income. even though the August 2, 2010 hearing took place eight months after 2009 ended.

7    As the draft amended tax returns that Respondent later delivered show, the Court

8  made support Orders based on a 2008 tax return that under-reported income because of

9  Respondent failure to immediately, fully and accurately disclose information as required by

10  Family Code section 2102(c).

11

12  **Breach of Fiduciary Duty Number 3 - Respondent's Failure To**

13  **Immediately, Fully And Accurately Disclose Material Facts And**

14  **Information About Assets, Liabilities, Income And Expenses**

15    In March 2009, Petitioner's first document demand was issued.  Category Number 39

16  of that document demand requested all general journals, subsidiary ledgers, and "all other

17  documents reflecting income, expenses and/or assets and liabilities of any . . . closely held

18  corporation   . . . in which you and/or your spouse have or have had any interest."

19  See Exhibit "R" [underline added].

20    On September 15, 2010, Respondent served a verified written response in which he

21  represented that he would produce all documents in his possession, custody and control

22  which were responsive to Category Number 39.  Exhibit S.  At the same time, Respondent

23  produced about 90,000 pages of documents, including documents responsive to category

24  39.  ¶ 25, Sturman dec.  Respondent did not disclose that there were additional documents

25  that were responsive to Category Number 39.  JMS dec.

26    In March 2011, Petitioner's second document demand was issued.  It requested

27  updated general ledgers, and documents showing AMP Plus' accounts payable, accounts

28  receivable and inventory.  See Exhibit "T".

1    In May 2011, Respondent filed a Motion for Protective Order regarding Petitioner's

2  second document demand.

3    On July 2011, Respondent's Motion for Protective Order was denied and he was

4  ordered to produce all documents that he had withheld that were responsive to Petitioner's

5  second document demand. *See* Tab D to Pet. RJN.

6    On August 26, 2011, Respondent produced 269 boxes of documents in response to

7  Petitioner's second document demand.  Those boxes contain about 1.2 million pages,

8  including hundreds of thousands of pages of documents reflecting the income and expenses

9  and/or assets and liabilities of AMP Plus from January 1, 2005 to September 15, 2010.

10  *See* ¶ 19, Deurksen dec. and Exhibit "U"

11    In other words, almost one year after Respondent supposedly produced all of the

12  documents in his possession, custody and control responsive to category 39 of Petitioner's

13  first document demand, he produced about 1.2 million additional pages of documents

14  regarding the "income and expenses and/or the assets and liabilities" of AMP Plus.

15    As set forth in the attached Declaration of William Duerksen, CPA/ABV, during the

16  year that Respondent withheld those documents, Petitioner's forensic accountants needed

17  those documents to determine the parties' incomes, to value the parties' community

18  business, to determine whether draft tax returns that Respondent had his tax accountant

19  prepare were accurate, and for other reasons.

20    Respondent's failure to disclose that he had those documents and to produce those

21  documents in response to discovery was a violation of his obligation to give Petitioner "equal

22  access" to those documents "upon request" as required by *Family Code* section 1100(e), as

23  well as his overall fiduciary duties to provide her with material facts and information

24  concerning the parties' community assets. *See Family Code* sections 721 and 2100 et seq.

25  / / / / /

26  / / / / /

27  / / / / /

28  / / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5553 .Fax (310) 271-3918

**Breach of Fiduciary Duty Number 4 - Respondent's Failure To Immediately, Fully And Accurately Disclose That He Took About $815,000 Of Community Money To Pay His Year 2009 Tax Liability**

On September 15, 2010, Respondent served his Preliminary Declaration of Disclosure, including a Schedule of Assets and Debts in which he represented that there was approximately $2.2 million held in accounts in the United States, including $925,084 in East West account xxx2336, with those funds "held in reserve for the Whitestone Jewels, LLC litigation." ("the Whitestone account") See Exhibit "V".

On October 4, 2010, Respondent's attorneys sent documents to Petitioner's attorneys that they said Petitioner would need to file her year 2009 separate tax return. See Exhibit "W".  That was the only notice that Petitioner received that Respondent was filing his own year 2009 income tax return.  See ¶ 19, F. Cohen dec.

On October 15, 2010, Respondent delivered his year 2009 tax returns which showed that he owed about $625,00 for Federal income taxes and $176,000 for California income taxes.  See Exhibit "X".  Respondent did not disclose whether he paid those tax liabilities and, if so, the source of the payments.  ¶ 20, F. Cohen dec.

On November 16 and 17, 2010, Respondent was deposed and he testified that he took $615,000 from the Whitestone account and $200,000 from AMP Plus to pay his year 2009 taxes.  Respondent also testified that he had not disclosed to Petitioner that he had taken that money and used it to pay his year 2009 taxes.  See Exhibit "Y".

Respondent's failure to disclose to Petitioner that he was taking $615,000 from the Whitestone account plus another $200,000 from AMP Plus to pay his year 2009 taxes was a breach of his fiduciary duties because he failed to immediately, fully and accurately update the financial information that he previously provided.[3]  See Family Code §2102(b).

---

[3]Respondent also violated the Automatic Temporary Restraining Orders.  However, that is a different issue.

KOLODNY & ANTEAU
9100 Wilshire Boulevard · Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

**Breach of Fiduciary Duty Number 5 - Respondent's Failure To Give Petitioner "Equal Access" To The Books And Records of AMP Plus "Upon Request"**

On November 24, 2011, Petitioner served a Demand for Inspection and Copying of Accounting Books and Records, and Corporate Minutes Pursuant to *Corporations Code* Section 1601 and *Schnabel v. Superior Court* (1993) 5 Cal.4th 704. *See* Exhibit "Z. That Demand notified Respondent that Petitioner and/or her representatives would appear at AMP Plus on December 2, 2010 to inspect and copy the business' accounting books and records, as well as its corporate minutes. The Demand also explained that the purpose of the inspection was to determine the value of the business, determine Respondent's income for purposes of support, determine what happened to funds held in bank accounts, and determine what adjustments needed to be made to correct the inaccurate tax returns that Respondent caused to be prepared and filed. *Id.*

When the Demand was issued, Petitioner was attempting to obtain documents before her Reply was due in connection with Petitioner's OSC. *See* ¶ 37, Sturman dec. However, Respondent objected and he refused to allow an inspection on December 2, 2010, saying that he would only make the community business' books and records available to Petitioner: (a) on Sundays, (b) if she provided the names, "affiliations," addresses and contact numbers for each person who would be present, (c) if there was a limit on the number of people that Petitioner would bring to AMP Plus, and, (d) Petitioner had to state, in advance "exactly what records [she] requests be made available."[4]  *See* Exhibits "AA" and "BB".

As a result of Respondent's objection and the limits he imposed, Petitioner was not able to inspect and copy AMP Plus' books, records and corporate minutes before her Reply was due, and Respondent breached his fiduciary duty to give Petitioner "equal access" to those books and records "upon request" as unambiguously required by *Family Code* section 1100(e), as well as "access at all times" as required by *Family Code* section 721(b).

---

[4]Respondent probably recognizes that Petitioner, non-managing spouse, cannot identify the exact documents that are to be inspected and copied at the community business that Respondent manages.

**Breach of Fiduciary Duty Number 6 - Respondent's Failure To Disclose Year 2010 Income At The January 2011 Hearing Regarding Support**

On January 6 and 12, 2011, at the hearing on Petitioner's OSC regarding support, Respondent failed to disclose year 2010 financial information regarding AMP Plus. That caused the Court to make support Orders based on AMP Plus' year 2009 income tax return. *See* Tab E to Pet. RJN.

About five months later, Respondent filed a Motion asking the Court to set aside the January 2011 support Orders, hold a new trial regarding support, reconsider its support Orders or, in the alternative, modify its support Orders. However, in that Motion, Respondent disclosed that AMP Plus' year 2009 income was about $1 million higher than he previously reported, meaning that the January 2011 support Orders were based on a tax return that under-reported AMP Plus income. *See* Exhibit "CC".

What this means is that Respondent failed to disclose year 2010 income at all <u>and</u> he inaccurately reported year 2009 income. Both of those things were breaches of Respondent's fiduciary duty. *See Family Code* section 2102(c).

**Breach of Fiduciary Duty Number 7 - Respondent's Failure To Disclose That He Paid A Substantial Amount Of His Year 2010 Estimated Taxes When The Court Ordered That Both Parties Could Withdraw Community Funds For That Purpose**

On January 6, 2011, Petitioner made an *ex parte* application to request that money be distributed from foreign accounts to pay her 2009 taxes, her 2010 estimated taxes and her anticipated 2011 taxes. *See* Exhibit "DD".

On January 12, 2011, the Court ordered that certain monies would be used to pay Petitioner's year 2009 tax liability. *See* Tab "E", Pet. RJN (page 15, line 24 - page 16, line 5).

/ / / / /

/ / / / /

/ / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1    With regard to Petitioner's 2010 estimated tax liability, Respondent's attorney argued

2    that there should be no distributions from foreign accounts because the amount of the

3    estimated tax liability had not been determined and he implied that Respondent had not paid

4    any year 2010 estimated tax payments.

5            **THE COURT:** But we know what the estimated payment is, and

6            the Respondent is going to have the same problem; right?

7            **MR. JAFFE:** Yes, and no money to pay it.

8            **THE COURT:** So unless funds are taken from one of the

9            overseas accounts to pay them - -

10           **MR. JAFFE:** At this point, on this date, we're speculating what

11           those amounts are going to be.

12   *See* Exhibit "EE".

13           When Respondent's attorney made that argument, Respondent was seated right next

14   to him at counsel table.

15           Despite Respondent's attorney's argument against distributing money to pay 2010

16   estimated taxes, the Court ordered that *both* parties could "take from the foreign

17   accounts...[an amount]...sufficient to pay the estimated taxes at 110 percent on the 2010

18   income." *See* Exhibit "FF".

19           On April 29, 2011, Respondent produced documents showing that he paid $600,000

20   towards his year 2010 estimated taxes in December 2010. *See* Exhibits "GG" and "HH".

21   That means the month before Respondent's attorney represented to the Court that

22   Respondent could not determine or pay his estimated taxes, Respondent had already paid

23   $600,000 of his estimated tax liability and he sat silently while his attorney made an

24   inaccurate argument that the Court relied on when allowing *both* parties to take money from

25   foreign accounts to pay year 2010 estimated taxes.

26   / / / / /

27   / / / / /

28   / / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1    Respondent's failure to cause his attorney to disclose that he had already paid a

2  substantial amount of his year 2010 estimated tax liability was a breach of fiduciary duty.[5]

3  *See Family Code* §2102(b) and (c).

4

5    **Breach of Fiduciary Duty Number 8 - Respondent's Failure To Disclose**

6    **The Source Of His Support Payments**

7    In Respondent's September 15, 2010 Schedule of Assets and Debts, he represented

8  that there were 12 foreign bank accounts[6] holding a total of about $46 million. Approximately

9  $4.1 million of that money was held in two accounts in the name of Seohyun International,

10  Ltd., which Respondent stated was a "non-operational foreign [company] formed for the sole

11  purpose of establishing bank accounts . . . ." Exhibit "V".

12    On December 9, 2010, Respondent filed his Responsive Declaration to Petitioner's

13  OSC in which he, his former forensic accountant, and his tax attorney testified that the

14  accounts held in the name of Seohyun International, Ltd., could only be used to pay taxes,

15  interest and penalties.[7]  Exhibit "II".

16

17

18

19

20

21

22    [5]At the June 27, 2011 hearing on Respondent's Motion to Vacate and Enter New
23  Orders, for new trial, for reconsideration or for modification, the Court reduced the amount
    that Petitioner was allowed to take to pay year 2010 taxes.  When the Court asked
24  Respondent whether he owed anything for year 2010 taxes, he testified that he did not
    remember, and the Court did not allow him to withdraw money for year 2010 taxes.  In
25  reality, Respondent's year 2010 tax return shows that he is to receive a refund.

26    [6]Respondent's Schedule of Assets and Debts listed 19 foreign accounts. Three of the
    accounts were "closed" and four of the accounts had zero balances.

27    [7]On January 6, 2011, the Court disqualified Respondent's tax attorney, Mr. Perez,
28  from testifying against Petitioner because he formerly represented Petitioner, the former
    matter and the present matter were substantially related, and Mr. Perez was taking a position
    adverse to Petitioner.  *See* Tab E to Pet. RJN.

IN RE THE MARRIAGE OF COHEN                                    CASE NO. BD 495 060
2011-11-16 MPA - Mtn re BOFD Sanctions & Accounting(b).676.wpd  2011-08-22 10:29 jad     PAGE 18
**MEMORANDUM OF POINTS AND AUTHORITIES**

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1    On January 12, 2011, the Court made guideline child and spousal support Orders.

2    However, it did not make Orders regarding fees and costs because it wanted evidence about

3    the amount of money that would be available after taxes, interest and penalties were paid.

4    Since Respondent's attorney represented that draft amended tax returns would be delivered

5    within two weeks, Petitioner's request for fees and costs was supposed to be heard within

6    45 days.[8] *See* Tab "E" to Pet. RJN.

7    In January 2011, February 2011, March 2011, April 2011 and May 2011, Respondent

8    paid child and spousal support and Petitioner believed that Respondent was paying support

9    from his income. *See* ¶ 28, F. Cohen dec. However, on June 20, 2011, Respondent filed

10    a declaration from his forensic accountant stating, in part, that the balance in AMP Plus'

11    foreign accounts dropped from about $4.1 million to approximately $1.6 million, largely

12    because Respondent used that money to pay support. *See* Exhibit "JJ".

13    On July 27, 2011, Respondent's attorney incorrectly argued that Respondent had

14    "always" distinguished between foreign personal accounts and foreign business accounts,

15    suggesting that it was appropriate for Respondent to pay support from foreign business

16    accounts. *See* Exhibit "KK".

17    If Respondent was truthful when he testified that he testified that the $4.1 million in

18    Seohyun's accounts was only available to pay taxes, interest and penalties, Respondent

19    breached his fiduciary duties by taking some or all of that money to pay support without

20    disclosing those withdrawals to Petitioner. *See Family Code* §2102.

21    If Respondent was not truthful when he testified that the $4.1 million in Seohyun's

22    accounts was only available to pay taxes, interest and penalties, he also breached his

23    fiduciary duties to Petitioner by failing to "accurately" disclose material facts and information

24    to her. *See Family Code* §2102.

25

26    _____

[8]In fact, Respondent did not provide draft amended tax returns within two weeks, i..e.,
27    by January 24, 2011. On March 7, 2011, Respondent's attorney represented to the Court
that the IRS' OVDI program made it impossible. However, the OVDI was not announced
28    until February 8, 2011, nearly two weeks after Respondent's tax returns were supposed to
be delivered. Therefore, the OVDI did not prevent Respondent from delivering amended tax
returns within two weeks.

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1   **Breach of Fiduciary Duty Number 9 - Respondent's Failure To Disclose**

2   **The Amount Of Professional Fees That He Incurred And Paid**

3       In May 2011, Respondent filed a Motion to vacate and enter new support Orders, for

4   a new trial, for reconsideration and/or to modify the Court's support Orders.  At the same

5   time, he filed an Income and Expense Declaration.  *See* Exhibit "LL".

6       In June 2011, Petitioner filed her Responsive Declaration to Respondent's Motion and

7   she also filed an Income and Expense Declaration stating that she had incurred with

8   Kolodny & Anteau, with her forensic accountants and with her former Family Law attorneys.

9   *See* Exhibit "MM".

10      On June 27, 2011, Respondent's attorney argued that Respondent's disclosure that

11  AMP Plus had about $1 million more of income in 2009 than was shown on the 2009 tax

12  return used by the Court to make support Orders showed that Respondent is forthright.

13  Ironically, Respondent's Income and Expense Declaration did not disclose that he paid:

14  (a) $103,000 to his former Family Law attorneys at Wasser, Cooperman & Carter

15  [*See* Exhibit "E"], (b) $250,000 to his former forensic accountants at Taylor and Lieberman

16  [Exhibits "NN" and "OO"], and, (c) about $73,000 to his current forensic accountants at

17  Gursey Schneider [Exhibits "PP" and "QQ"].[9]

18      In this instance, Respondent's failure to fully and accurately disclose the professional

19  fees that he incurred and paid, as well as the source of the payments was a breach of his

20  fiduciary duties.  *See Family Code* §2102(c).

21  / / / / /

22  / / / / /

23  / / / / /

24  / / / / /

25  / / / / /

26  / / / / /

27  _____

28      [9]As the Exhibits show, Petitioner issued deposition subpoenas to obtain this
information.  The amount sets above were as of the June 27, 2011 hearing, however
Respondent paid $210,000 to Gursey, Schnider as of October 13, 2011.  *See* Exhibit "QQ".

IN RE THE MARRIAGE OF COHEN                           CASE NO. BD 495 060
2011-11-16 MPA - Mtn re BOFD Sanctions & Accounting(b).676.wpd  2011-08-22 10:29 jad          PAGE 20
**MEMORANDUM OF POINTS AND AUTHORITIES**

**Breach of Fiduciary Duty Number 10 - Respondent's Failure To Disclose The Documents Supporting The Adjustments Shown On His Tax Accountant's Work Papers**

On May 20, 2011, Respondent delivered draft amended tax returns for AMP Plus, as well as the work papers from the accountant who prepared those tax returns. *See* Exhibit "RR". Those work papers showed that there were over 400 adjustments to the original returns that total about $47.7 million and that are based on representations from Respondent. *See* ¶ 17, Duerksen dec. Despite the huge amount of those adjustments, Respondent did not disclose how they were calculated or the documents, if any, that he used to calculate the adjustments.

In June 2011, when Petitioner filed her Responsive Declaration to Respondent's Motion to Vacate and Enter a New Support Order, she included a declaration from her forensic accountant to explain that Petitioner could not determine whether the amended tax returns were correct without knowing, among other things, the basis for the adjustments that Respondent had his tax accountant make. *See* Exhibit "SS".

In August 2011, Petitioner's attorneys sent a letter explaining that Petitioner can not determine whether the draft amended tax returns are accurate and, therefore, whether she should sign them without knowing how the adjustments were determined. *See* Exhibit "TT". Petitioner's attorneys also sent another letter asking Respondent to disclose the documents, if any, that he used when determining the adjustments. *See* Exhibit "UU".

At about the same time, Petitioner issued her a seventh document demand to obtain the documents, if any, that Respondent used when telling his tax accountant to make over 400 adjustments to the original tax returns that total about $47.7 million. Almost every category of the seventh document demand addressed a specific adjustment shown on the work papers from Respondent's tax accountant. Exhibit "VV."[10]

---

[10]The first seven or eight categories in the seventh document demand were not requests for documents related to the adjustments made by Respondent's accountant.

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1    On August 26, 2011, Respondent delivered approximately 1.2 million pages of

2    documents to a storage facility pursuant to an Order denying his motion for protective Order

3    and requiring him to produce all documents that he withheld that were responsive to demand

4    number 2 to the extent that they were previously withheld.    Exhibit "WW"; *see*

5    *also* Exhibit "U". Petitioner's attorney then noticed Respondent's deposition for the storage

6    facility because they had questions about the organization and completeness of the

7    documents. Exhibit "XX".

8    On September 3, 2011, Petitioner also made an ex parte application to prevent

9    Respondent from withdrawing the approximately 1.2 million pages because he started to

10    threaten that he would remove those documents three days after they were delivered.

11    Exhibit "YY." In opposing that *ex parte* application, Respondent's attorney argued that it was

12    not necessary to depose Respondent to find out what documents, if any, supported the

13    adjustments to the tax returns because Respondent was going to disclose that information

14    in response to Petitioner's seventh document demand.  Exhibit "ZZ."

15    However, on October 21, 2011, Respondent served a written response to the

16    document demand in which he repeatedly stated that the documents he used when making

17    adjustments to tax returns are in approximately the 1.2 million pages that he produced on

18    August 2011. Exhibit "AAA".  In other words, instead of producing the documents showing

19    the documents, if any, that he used when telling his tax accountant to make $47.7 million

20    worth of adjustments to tax returns, Respondent told Petitioner that she had to go find those

21    needles in a haystack of about 1.2 million pages of documents.

22    Petitioner's attorney then sent a meet-and-confer letter explaining that Respondent's

23    written response was legally inappropriate, and asking for a written response that complies

24    with the *Code of Civil Procedure*.  Exhibit "BBB".  Respondent's attorney sent a letter

25    claiming that Respondent had no legal obligation to do anything more than what he did, but

26    agreeing that Respondent would send the documents to Petitioner over the next month or

27    two. Exhibit "CCC". However, Respondent would not sign a Stipulation and Order requiring

28    him to produce those documents by a date certain. Exhibit "DDD".

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN                                    CASE NO. BD 495 060
2011-11-16 MPA - Mtn re BOFD Sanctions & Accounting(b).676.wpd  2011-08-22 10:29 jad       PAGE 22
**MEMORANDUM OF POINTS AND AUTHORITIES**

1    Since Petitioner cannot rely on Respondent to voluntarily provide these documents

2  - which her attorney has been specifically requesting since mid-August 2011 - she intends

3  to file a Motion to Compel because of Respondent's failure to provide *Code* compliant

4  discovery responses and his subsequent failure to enter into a Stipulation and Order which

5  will require him to deliver the documents by a date certain.

6    For purposes of this Motion, Respondent's failure to disclose material, facts and

7  information showing the basis, if any, for more than 400 adjustments to tax returns, totaling

8  about $47 million is a breach of fiduciary duty.  *See Family Code* §§721, 1100, and 2102.

9

10                                 **V.**

11                              **CONCLUSION**

12    Respondent possesses and controls almost all of the financial information regarding

13  the parties' assets, liabilities, income and expenses.

14    That is the reason that Petitioner has informally requested that Respondent provide

15  material facts and information about those subjects, that is the reason that Petitioner has

16  propounded discovery about those subjects, that is the reason that almost all of the financial

17  information in this case has come from Respondent and that is the reason that Respondent

18  was the party who had draft amended tax returns prepared.

19    Here, in violation of his fiduciary duties, Respondent has repeatedly failed to disclose

20  material facts and information to Petitioner, and she has repeatedly been prejudiced.

21  Support Orders have been made based on tax returns that under-reported income, and

22  Respondent knew or should have known that the tax returns were inaccurate.  Respondent

23  has refused to give Petitioner "equal access" to the books and records of the community

24  business "upon request." Respondent has failed or refused to disclose the basis for millions

25  of dollars of adjustments that he had his tax accountant make when preparing draft amended

26  tax returns, making it impossible for Petitioner to determine whether those draft amended

27  tax returns are accurate.  Respondent's failure to provide documents in response to

28  discovery has created a situation in which Petitioner's forensic accountants have been

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1   without documents and other information that they need to determine income available for

2   support, to value the parties' business, and provide many other important services to

3   Petitioner. Respondent has falsely stated that money in foreign accounts could only be used

4   to pay taxes, interest and penalties when he wanted to prevent Petitioner from accessing

5   that money, then he used that same money to pay support, i.e., for a purpose other than

6   paying taxes, interest and penalties.[11]

7             Petitioner cannot settle the case or even issues within the case without the material

8   facts and information that Respondent possesses.

9             Petitioner cannot determine what happened to the $4.1 million that in accounts in the

10   name of Seohyun that Respondent initially claimed could only be used to pay taxes,

11   penalties and interest, but that he later used to pay support.

12             Respondent has breached his fiduciary duties. Respondent has frustrated the policy

13   of the law to promote settlement and decrease litigation costs. Respondent should be

14   sanctioned, he should be ordered to account for money deposited into and taken out of

15   foreign accounts, and he should be ordered to account for money that he has paid for

16   professional fees.

17

18   DATED: November 16, 2011             KOLODNY & ANTEAU

19

20                         By:

21                             JEFF M. STURMAN
                              State Bar No. 177695

22                             Attorneys for Petitioner,
                              FARIBA COHEN

23

24

25

26

27           [11]Petitioner believes that Respondent has used money from foreign accounts to pay
support based on the June 20, 2011 Declaration of Rosemarie Reed, CPA, and the

28   arguments made by Respondent's attorney on June 27, 2011. However, Petitioner does not
actually know how Respondent used money in foreign accounts, and that is the basis for the
request that he be ordered to give an accounting.

IN RE THE MARRIAGE OF COHEN                   CASE NO. BD 495 060
2011-11-16 MPA - Mtn re BOFD Sanctions & Accounting(b).676.wpd  2011-08-22 10:29 jad       PAGE 24
MEMORANDUM OF POINTS AND AUTHORITIES

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

# DECLARATION OF FARIBA COHEN

I, FARIBA COHEN, declare as follows:

1.    I am the Petitioner in the within action.

2.    I make and submit this Declaration in connection with my Motion regarding breach of fiduciary duty.

3.    Respondent, Saeed Cohen, and I married on November 19, 1988.  We had three children during marriage - Ryan (age 21), Brandon (age 18) and Lauren (age 13).  In about 1991, Saeed started operating our business, AMP Plus, Inc., dba Elco Lighting.

4.    During marriage, Saeed managed and controlled AMP Plus, as well as other our other businesses and investments.  For example, Saeed managed and controlled Lighton Properties, LLC, which owns the property were AMP Plus' does business. I was and I continue to be a part-time State Farm insurance agent.  During marriage, most of my time was devoted to being a full-time mother and homemaker.  I did not manage and control AMP Plus or our other businesses and investments.

5.    During marriage Saeed told me very little about AMP Plus' income, assets, debts and liabilities. He also told me very little about the income, assets, debts and liabilities of our other businesses and investments.

6.    On October 27, 2008, I caused the Petition for Dissolution of Marriage to be filed.  About that time, I had the Summons and the Petition served on Saeed.  However, we continued to live together with our children in our house in Beverly Hills.

7.    In about March 2009, I caused my former attorneys at Trope and Trope to stop litigating this Family Law after Saeed told me that he wanted to save our marriage.  I believed that it would be best for our children to save our marriage if possible and I wanted to give Saeed a chance to prove that he was sincere about reconciling.

8.    Before and after March 2009, I wrote checks for living expenses from a Wells Fargo account in both Saeed's and my name.

/ / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

9.  On February 24, 2010, I learned that checks that I wrote from our joint Wells Fargo account were returned due to insufficient funds. Saeed had not told me that he was going to stop depositing money into that account.

10.  On February 26, 2010, Saeed told me that he stopped depositing money into our joint Wells Fargo account and that he was going to stop paying the mortgage, and allow our home to go into foreclosure. Saeed said that the alternative was for me to come up with money to place into the joint account. Because I was worried that Saeed would financially cut me off and I wanted to have some security for our children and myself, I transferred $800,000 from a different Wells Fargo account into an account in my name.

11.  On March 5, 2010, Saeed made an *ex parte* application and the Court ordered that the $800,000 was to be returned to the Lighton Properties Wells Fargo account, and not withdrawn absent a written agreement or a Court Order. I then caused the money to be transferred back into the Lighton Properties Wells Fargo account.

12.  Around the end of April 2010, I retained Kolodny & Anteau, and I had them substituted into this case.

13.  On July 8, 2010, I caused an Order to Show Cause to be filed, largely to obtain Orders for child support, spousal support, and attorney's fees and costs. I was not receiving money from AMP Plus, Lighton Properties, or from the other businesses and investments that Saeed controlled during marriage.

14.  On July 22, 2010, I received a copy of an Income and Expense Declaration, and I recognized the signature on that document as Saeed's signature because I saw him sign his name hundreds of times during our marriage. A true and correct copy the Income and Expense Declaration that I received and reviewed on June 22, 2010 is attached to Petitioner's Compendium of Exhibits as **Exhibit "E"** and incorporated herein. I reviewed that Income and Expense Declaration but it did not provide information about AMP Plus' income, assets, debts, expenses, profit or loss for 2009 or 2010. I also had not received that information from Saeed in another way.

/ / / / /

15. On July 28, 2010, I received a copy of a letter from Jaffe and Clemens which I reviewed. A true and correct copy of that letter is attached to Petitioner's Compendium of Exhibits as **Exhibit "F"** and incorporated herein. Before receiving that letter, I did not know about almost all of the accounts listed in the letter.

16. On August 2, 2010, I was in Court for the hearing on my Order to Show Cause when the Court made support Orders based on our 2008 tax return. Saeed had not provided me with information about AMP Plus' year 2008 finances when he told me to sign either the our year 2008 tax return and I relied on him to have an accurate tax return prepared because Saeed managed and controlled the businesses that generated almost all of our income. When the Court made the August 2, 2010 support Orders, based on our 2008 tax return, I believed that it reported all of our income. I would have told the Court that our 2008 tax return under-reported our income if had known that it did.

17. On September 2, 2010, I received a copy of a letter from Jaffe and Clemens which I reviewed. A true and correct copy of that letter is attached to Petitioner's Compendium of Exhibits as **Exhibit "G"** and incorporated herein. Before receiving that letter, Saeed had not told me that he transferred $8.3 million between foreign accounts and I did not know of the accounts that he transferred money to.

18. On September 15, 2010, I received a copy of a Schedule of Assets and Debts and I recognized the signature on that document as Saeed's signature. A true and correct copy the Schedule of Assets and Debts that I received and reviewed on September 15, 2010 is attached to Petitioner's Compendium of Exhibits as **Exhibit "V"** and incorporated herein.

19. On October 4, 2010, I received a copy of a letter from Jaffe and Clemens which I reviewed. A true and correct copy of that letter is attached to Petitioner's Compendium of Exhibits as **Exhibit "W"** and incorporated herein. Before receiving that letter, Saeed did not tell me that he was going to file a separate year 2009 tax return and I did not know that I would need to file my own tax return for 2009. After I received that letter, I had my own year 2009 tax return prepared and I relied on the documents that I received with Jaffe and Clemens' October 4, 2010 letter because I did not have that information, including the year

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1  2009 financial information for AMP Plus. I had my accountants report one-half of the AMP

2  Plus' year 2009 income on my year 2009 tax return based on the information that I received

3  with Jaffe and Clemens' October 4, 2010.

4      20.    On October 15, 2010, I received a copies of Saeed's Federal and state tax

5  returns from Jaffe and Clemens. A true and correct copy of a portion of the tax returns is

6  attached to Petitioner's Compendium of Exhibits as **Exhibit "X"** and incorporated herein.

7  I did not know if Saeed paid his year 2009 taxes as he did not tell me whether he made

8  those payments.

9      21.    On November 16 and 17, 2010, I was at Kolodny & Anteau when my attorney,

10  Mr. Sturman, took Saeed's deposition and he testified that he took $615,000 from the

11  "Whitestone account" and $200,000 from AMP Plus to pay his year 2009 taxes. Before I

12  heard that testimony, Saeed had not told me that he had taken money out of the

13  "Whitestone account" to pay his year 2009 income taxes or for any other purpose. This was

14  the first time that Saeed told me that he had taken money out of AMP Plus to pay his year

15  2009 income taxes. Saeed also had not told me that he would transfer any of the money in

16  the Whitestone account or from AMP Plus to me so that I would have that I could use that

17  money to pay my year 2009 taxes.

18      22.    In November 2010 and December 2010, I wanted my attorneys and forensic

19  accountants to inspect and copy AMP Plus' books and records before the hearing on my

20  Order to Show Cause. However, on December 1, 2010, I received a copy of a letter and

21  another document from Jaffe and Clemens. True and correct copies of the letter and the

22  document are attached to Petitioner's Compendium of Exhibits as **Exhibits "AA" and "BB"**

23  and incorporated herein. I did not have access to AMP Plus' books and records before

24  December 15, 2010, when I had to file my Reply for my Order to Show Cause which was

25  supposed to be heard on December 22, 2010.

26  / / / / /

27  / / / / /

28  / / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

23.     On or about December 9, 2010, I received a copy of Saeed's Responsive Declaration to my Order to Show Cause and I read Saeed's declaration dated December 9, 2010 in which he said the following in paragraph 29.c.:

> Two of the foreign bank accounts (Mega International Bank ending in #1960 and Shanghai Commercial Bank ending in #9478) have been classified in the 2009 returns as accounts belonging to AMP Plus, Inc., even though they stand in the name of a different, non-operational foreign business entity, Seohyun International Ltd. . . . **The combined balance in these accounts at December 31, 2009 was approximately $4.1 million. Thus, although the 2009 AMP Plus, Inc., tax return reflects a cash balance in AMP Plus, Inc. of approximately $4.8 million, the large majority of those funds were and remain overseas and are not accessible to me, since my understanding is that they are subject to the same taxes, interest and penalties as the other foreign accounts.**
> [bold added]

Page 11, line 25 - page 12, line 11 of the Declaration of Saeed Cohen dated December 9, 2010, is attached to Petitioner's Compendium of Exhibits as **Exhibit "II"**, along with other portions of Respondent's Responsive Declaration.

24.     On December 22, 2010, I went to Court with my attorneys, Mr. Kolodny and Mr. Sturman. At that time, I heard Judge Nelson Order that the hearing on my Order to Show Cause would start on January 6, 2011.

25.     On January 6 and 12, 2011, I was in Court for the hearing on my Order to Show Cause. I did not have year 2010 financial information for AMP Plus other than the documents that Saeed produced to my attorneys or to my forensic accountants.

26.     On January 12, 2011, I was present when the Court made support Orders based on AMP Plus' year 2009 tax return. At that time, I did not know if AMP Plus' year 2009 tax return was correct because I did not manage and control the business.

27.     On January 12, 2011, I was present when Judge Nelson ordered that Saeed and I could each withdraw an amount of money from foreign accounts that was equal to 110% of our year 2009 tax liability in order to pay year 2010 estimated taxes. I did not hear Saeed say that he had paid any of his estimated taxes for 2010. However, I did hear Saeed's attorney, Mr. Jaffe, say that Saeed was unable to pay his estimated taxes.

KOLODNY & ANTEAU
9100 Wilshire Boulevard · Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310)271-5533 Fax (310) 271-3918

KOLODNY & ANTEAU
9100 Wilshire Boulevard · Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

28.    In January 2011, February 2011, March 2011, April 2011 and May 2011, I received support payments from Saeed. I believed those payments were from Saeed's income, not from foreign accounts, based on Saeed's December 9, 2011 declaration which said that we could not use the money in AMP Plus' foreign accounts for any purpose other than paying taxes, penalty and interest.

29.    On or about May 17, 2011, I received Saeed's Motion to Vacate and Enter New Order, for New Trial, for Reconsideration, To Re-Open Evidence and/or for Modification of the Court's January 2011 Support Orders. I also received Saeed's Income and Expense Declaration dated May 14, 2011. I reviewed those documents at or about the time that I received them.

30.    On or about May 20, 2011, I received a copy of a letter from Saeed's attorneys and amended joint tax returns. True and correct copies of the letter is attached to Petitioner's Compendium of Exhibits as **Exhibit "RR"** and incorporated herein. I did not know whether the amended joint tax returns were correct.

31.    In June 2011, I caused my Responsive Declaration and my Income and Expense Declaration to be filed and served.

32.    On or about June 20, 2011, I received and reviewed Saeed's Reply for his Motion to Vacate which included the Declaration of Rosemarie Reed, CPA which said:

> 41. The above figures do not include $4.1 million of cash held in foreign accounts in names other than AMP Plus, Inc. As of today, those cash balances have been reduced to $1.578 million in large part to enable Respondent to fund his support obligation to Petitioner.

Attached hereto as **Exhibit "JJ"** and incorporated herein is a true and correct copy of page 8 of the Declaration of Rosemarie Reed, CPA, dated June 20, 2011. When I read paragraph 41 of Ms. Reed's declaration, that was the first time that I learned that Saeed paid support to me from foreign accounts that he previously stated could only be used to pay taxes, penalties and interest.

/////

/////

33.    To date, I have not signed the proposed amended <u>joint</u> tax returns that I received in May 2011, because I still do not know whether they are correct.

34.    The hereinabove set forth facts are true and correct and are known to me by reason of my personal involvement in the activity, my personal observation of the event.

I declare, under penalty of perjury pursuant to the laws of the State of California, that the foregoing is true and correct.

Executed this 16 day of November, 2011.

FARIBA COHEN

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN
2011-11-16 Declaration of F Cohen Re Breach of Fiduciary Duty.wpd  2011-10-05 13:37 JMS
DECLARATION OF FARIBA COHEN

CASE NO. BD 495 060
PAGE 7

## DECLARATION OF JEFF M. STURMAN

I, JEFF M. STURMAN, declare as follows:

1.      I make and submit this Declaration in connection with Petitioner's Motion for Breach of Fiduciary Duty.

2.      I am a partner of Kolodny & Anteau, Petitioner's attorney of record.  Since approximately April 2010, I have been the attorney at Kolodny & Anteau who has had primary responsibility for handling this case.  Among other things, I have provided the following legal services or had them provided by other attorneys or support staff at Kolodny & Anteau who work under my direction and supervision: (a) prepared letters to Respondent's attorneys and to third parties, (b) reviewed letters that Kolodny & Anteau has received in connection with this case, (c) prepared discovery which was propounded on Petitioner's behalf, (c) prepared discovery responses for Petitioner, (d) reviewed Respondent's discovery responses, (e) prepared *ex parte* applications, oppositions to *ex parte* applications, motions, oppositions to motions, and an order to show cause, and, (f) represented Petitioner at the depositions of third party witnesses.

3.      Additionally, I have: (a) taken Respondent's deposition on November 16 and 18, 2010, and on January 26, 2011, (b) represented Petitioner at her deposition on November 8 and 12, 2010, and on January 28, 2011, and, (c) represented Petitioner in Court at *ex parte* applications, at hearings on Motions and at hearings her Orders to Show Cause.

4.      Stephen A. Kolodny is Petitioner's lead trial attorney.

5.      I prepared the attached Memorandum of Points and Authorities for Petitioner's Motion for Breach of Fiduciary Duty, and I organized this declaration to correspond to the sections in the Memorandum of Points and Authorities.  For that reason, this declaration is not chronological.  The title of each section below is the same as the titles within the attached Memorandum of Points and Authorities to make it more convenient for the Court to find the paragraphs of this declaration that correspond to sections in Memorandum of Points and Authorities.

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1    6.    I am causing the Exhibits referred to below to be separately submitted as

2 Petitioner's Compendium to her Motion for Breach of Fiduciary Duty. I am also causing

3 many of the Exhibits to be highlighted for the Court's convenience.

4

5                              **Background Facts**

6    7.    On November 16, 2010, I was at Kolodny & Anteau. Respondent appeared

7 with Daniel J. Jaffe of Jaffe and Clemens, his attorney or record. On that day, I took

8 Respondent's deposition. Attached to Petitioner's Compendium of Exhibits as **Exhibit "A"**

9 and incorporated herein is a true and correct copy of pages 7-8, and 74 of the Reporter's

10 Transcript of the Deposition of Saeed Cohen taken on November 16, 2010.

11    8.    On December 9, 2010, I received and reviewed Respondent's Responsive

12 Declaration to Petitioner's then pending Order to Show Cause for child support, spousal

13 support, and attorney's fees and costs. Attached to Petitioner's Compendium of Exhibits as

14 **Exhibit "B"** and incorporated herein are true and correct copies of pages 1, 7, 26, 26 and

15 40 of the Declaration of Saeed "Steve" Cohen dated December 9, 2010 which were attached

16 to that Responsive Declaration.

17    9.    On July 8, 2010, I caused Petitioner's Order to Show Cause for child support,

18 spousal support, attorney's fees and costs, and other Orders to be filed and served.

19 Attached to Petitioner's Compendium of Exhibits as **Exhibit "C"** is a true and correct copy

20 of the face page of that Order to Show Cause. That Order to Show Cause was set for

21 hearing on August 2, 2010.

22    10.    On July 16, 2010, I appeared in Court after I received notice that Respondent

23 would make an *ex parte* application. Attached to Petitioner's Compendium of Exhibits as

24 **Exhibit "D"** are true and correct copies of the face page of the *ex parte* application, the

25 Application for Order form attached thereto and the "Attachment 9 to FL-150" that were part

26 of the *ex parte* application that I received at the courthouse from Respondent's attorneys on

27 July 16, 2010. I opposed Respondent's *ex parte* application.

28 / / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN                                    CASE NO. BD 495 060
2011-11-04 Declaration of Jeff M Sturman.wpd  2011-10-17 14:32 JMS                    PAGE 2
                    **DECLARATION OF JEFF M. STURMAN**

11.    On July 22, 2010, I received and reviewed Respondent's Responsive Declaration and Respondent's Income and Expense Declaration in connection with the August 2, 2010 hearing on Petitioner's Order to Show Cause.  Attached to Petitioner's Compendium of Exhibits as **Exhibit "E"** is a true and correct copy of the Income and Expense Declaration that I received on July 22, 2010.  There was no profit and loss statement, or other financial information for AMP Plus included in Respondent's July 22, 2010 Income and Expense Declaration.

12.    On July 28, 2010, I received and reviewed a letter from Daniel J. Jaffe at Jaffe and Clemens.  Attached to Petitioner's Compendium of Exhibits as **Exhibit "F"** is a true and correct copy of that letter.

**Breach of Fiduciary Duty Number 1 - Respondent's Failure To Disclose Transfers Between Foreign Accounts**

13.    On September 2, 2010, I received and reviewed a letter from Daniel J. Jaffe at Jaffe and Clemens.  Attached to Petitioner's Compendium of Exhibits as **Exhibit "G"** is a true and correct copy of that letter.

14.    On November 3, 2010, I received a letter and documents from Jaffe and Clemens.  Attached to Petitioner's Compendium of Exhibits as **Exhibit "H"** are those documents, as well as declaration certifying the accuracy of the translations of those pages.

15.    On November 17, 2010, I was at Kolodny & Anteau.  Respondent appeared with Daniel J. Jaffe of Jaffe and Clemens, his attorney or record.  On that day, I took Respondent's deposition.  Attached to Petitioner's Compendium of Exhibits as **Exhibit "I"** and incorporated herein is a true and correct copy of pages 241-246 of the Reporter's Transcript of the Deposition of Saeed Cohen taken on November 16, 2010.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

**Breach of Fiduciary Duty Number 2 - Respondent's Failure To Immediately, Fully And Accurately Disclose Income In Connection With The August 2, 2010 Hearing Regarding Interim Support**

16.    On September 15, 2010, I received a letter and a computer disk from Jaffe and Clemens. Attached to Petitioner's Compendium of Exhibits as **Exhibit "J"** are true and correct copies of pages that I caused to be printed from that computer disk.

17.    On September 15, 2010, I received a letter and a computer disk from Jaffe and Clemens. Attached to Petitioner's Compendium of Exhibits as **Exhibit "K"** are true and correct copies of pages that I caused to be printed from that computer disk.

18.    On November 17, 2010, I was at Kolodny & Anteau. Respondent appeared with Daniel J. Jaffe of Jaffe and Clemens, his attorney or record. Attached to Petitioner's Compendium of Exhibits as **Exhibit "L"** and incorporated herein is a true and correct copy of pages 314-323 of the Reporter's Transcript of the Deposition of Saeed Cohen taken on November 16, 2010.

19.    On November 30, 2010, I caused Petitioner's Second Supplement To Her Order To Show Cause Filed July 8, 2010 to be filed and served. Attached to Petitioner's Compendium of Exhibits as **Exhibit "M"** and incorporated herein is a true and correct copy of the face page of Petitioner's Second Supplement, as well as pages 1, 72-79 and 104 of the Declaration of Jeff M. Sturman dated November 30, 2010.

20.    On December 8, 2010, I received a letter and another document from Jaffe and Clemens. Attached to Petitioner's Compendium of Exhibits as **Exhibit "N"** are true and correct copies of that letter and the document that arrived with it.

21.    On May 20, 2011, I received a letter and documents from Jaffe and Clemens. Attached to Petitioner's Compendium of Exhibits as **Exhibit "O"** and incorporated herein are true and correct copies of the pages that I received which are Bates stamped SC-43626, SC-43629, and SC-43630.

/ / / / /

/ / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

22.     On May 20, 2011, I received a letter and documents from Jaffe and Clemens. Attached to Petitioner's Compendium of Exhibits as **Exhibit "P"** and incorporated herein are true and correct copies of the pages that I received which are Bates stamped SC-41765 through SC-41768.

23.     On May 20, 2011, I received a letter and documents from Jaffe and Clemens. Attached to Petitioner's Compendium of Exhibits as **Exhibit "Q"** and incorporated herein are true and correct copies of the pages that I received which are Bates stamped SC-42027 through SC-42020.

**Breach of Fiduciary Duty Number 3 - Respondent's Failure To Immediately, Fully And Accurately Disclose Material Facts And Information About Assets, Liabilities, Income And Expenses**

24.     In about May 2010, Kolodny & Anteau received Petitioner's files from her former attorney, Trope and Trope. I reviewed those files at or about that time. Attached to Petitioner's Compendium of Exhibits as **Exhibit "R"** and incorporated herein is a true and correct copy of a portion of Petitioner's Demand for Production and Inspection of Documents Pursuant to C.C.P. §2031.010 et seq. [Set One], which was included within the files that we received from Trope and Trope.

25.     On September 15, 2010, I received and reviewed Respondent's Response to Demand for Production and Inspection of Documents, Set One. Attached to Petitioner's Compendium of Exhibits as **Exhibit "S"** and incorporated herein is a true and correct copy of a portion of that document. I also received a computer disk that I reviewed which had about 90,000 pages of documents on it.

26.     On March 10, 2011, I caused Petitioner's Second Demand to Respondent for the Production of Documents for Inspection and Copying to be served. Attached to Petitioner's Compendium of Exhibits as **Exhibit "T"** and incorporated herein is a true and correct copy of a portion of that document.

27.     On May 13, 2011, I received Respondent's Motion for Protective Order.

**KOLODNY & ANTEAU**
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

28. On July 6, 2011, I filed and served Petitioner's Responsive Declaration to that Motion for Protective Order.

29. On July 25, 2011, I appeared with Petitioner at the offices of ADR in Century City, California, and I represented Petitioner at a hearing on Respondent's Motion for Protective Order. Attorneys Bruce A. Clemens and David B. Farkas or Jaffe and Clemens appeared and they represented Respondent who also present. The Honorable John W. Ouderkirk, Judge *Pro Tempore* regarding discovery, presided over the hearing.

30. On August 3, 2011, I received a copy of a document entitled "Ruling on Respondent's Motion for Protective Order and for Sanctions." I caused that Ruling to be filed with the Superior Court. I am causing a true and correct copy that Ruling to be attached to Petitioner's Request for Judicial Notice under Tab D thereof.

31. On or about August 24, 2011, David B. Farkas of Jaffe and Clemens told me during a telephone call that Respondent was producing boxes of documents pursuant to Judge Ouderkirk's Ruling to a document storage and copying facility known as Discovery Data Solutions.

32. On August 30, 2011, I received a copy of a letter. Attached to Petitioner's Compendium of Exhibits as **Exhibit "U"** is a true and correct copy of the letter that I received on August 30, 2011.

**Breach of Fiduciary Duty Number 4 - Respondent's Failure To Immediately, Fully And Accurately Disclose That He Took About $815,000 Of Community Money To Pay His Year 2009 Tax Liability**

33. On September 15, 2010, I received Respondent's Preliminary Declaration of Disclosure, including a Schedule of Assets and Debts. Attached to Petitioner's Compendium of Exhibits as **Exhibit "V"** is a true and correct copy of Respondent's Preliminary Declaration of Disclosure, and a portion of the Schedule of Assets and Debts that I received.

/ / / / /

/ / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1    34.    On October 4, 2010, I received a letter from Jaffe and Clemens, which had

2    documents with it.    Attached to Petitioner's Compendium of Exhibits as **Exhibit "W"** is a

3    true and correct copy of the letter.

4    35.    On October 15, 2010, I received an email with attachments from

5    Sandra P. Mendell of Jaffe and Clemens.    Attached to Petitioner's Compendium of Exhibits

6    as **Exhibit "X"** is a true and correct copy of that email and a portion of the documents that

7    were attached to it.

8    36.    On November 17, 2010, I was at Kolodny & Anteau.    Respondent appeared

9    with Daniel J. Jaffe of Jaffe and Clemens, his attorney or record.    Attached to Petitioner's

10    Compendium of Exhibits as **Exhibit "Y"** and incorporated herein is a true and correct copy

11    of pages 332-340 of the Reporter's Transcript of the Deposition of Saeed Cohen taken on

12    November 16, 2010.

13

14    **Breach of Fiduciary Duty Number 5 - Respondent's Failure To Give**

15    **Petitioner "Equal Access" To The Books And Records of AMP Plus**

16    **"Upon Request"**

17    37.    On November 24, 2010, I caused a document entitled Demand for Inspection

18    and Copying of Accounting Books and Records, and Corporate Minutes Pursuant to

19    *Corporations Code* Section 1601 and *Schnabel v. Superior Court* (1993) 5 Cal.4th 704, to

20    be served at Jaffe and Clemens.    Attached to Petitioner's Compendium of Exhibits as

21    **Exhibit "Z"** and incorporated herein is a true and correct copy of that document.    I caused

22    that Demand to be issued in order to obtain copies of AMP Plus' books, records and

23    corporate minutes before Petitioner's Reply was due in connection with the hearing on her

24    then pending Order to Show Cause.

25    38.    On November 30, 2010 and December 1, 2010, I received letters from

26    Daniel J. Jaffe at Jaffe and Clemens.    Attached to Petitioner's Compendium of Exhibits as

27    **Exhibit "AA"** and incorporated herein are true and correct copies of those letters.

28    / / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN                                                    CASE NO. BD 495 060
2011-11-04 Declaration of Jeff M Sturman.wpd  2011-10-17 14:32 JMS                        PAGE 7
**DECLARATION OF JEFF M. STURMAN**

39.    On December 1, 2010, I received a document entitled Respondent's Objection

to Petitioner's "Demand for Inspection and Copying of Accounting Books and Records, and

Corporate Minutes Pursuant to *Corporations Code* Section 1601 and *Schnabel v. Superior*

*Court* (1993) 5 Cal.4th 704."    Attached to Petitioner's Compendium of Exhibits as

**Exhibit "BB"** and incorporated herein are true and correct copies of those letters.

**Breach of Fiduciary Duty Number 6 - Respondent's Failure To Disclose**

**Year 2010 Income At The January 2011 Hearing Regarding Support**

40.    On May 17, 2011, I received a Motion from Jaffe and Clemens.    Attached to

Petitioner's Compendium of Exhibits as **Exhibit "CC"** and incorporated herein are true and

correct copies of the face page of the Motion, as well as pages 59, 62 and 64 of the

Declaration of Saeed "Steve" Cohen dated May 13, 2011 which was attached to that Motion.

**Breach of Fiduciary Duty Number 7 - Respondent's Failure To Disclose**

**That He Paid A Substantial Amount Of His Year 2010 Estimated Taxes**

**When The Court Ordered That Both Parties Could Withdraw Community**

**Funds For That Purpose**

41.    On January 6, 2011, I made an *ex parte* application in Department 60 of the

Los Angeles Superior Court.    Attached to Petitioner's Compendium of Exhibits as

**Exhibit "DD"** is a true and correct copy of the face page of the *ex parte* application, the

Application for Order, and the Attachment 9 to Form FL-310 for that *ex parte* application.

[The hearing date on the face page incorrectly states "January 5, 2011."]

42.    On January 12, 2011, I was in Court for the second day of hearings on

Petitioner's Order to Show Cause filed on July 8, 2010.    Attached to Petitioner's

Compendium of Exhibits as **Exhibit "EE"** is a true and correct copy of pages 134 and 135

of the Reporter's Transcript of Proceedings from the January 12, 2011 hearing in this case.

/ / / / /

/ / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN                                    CASE NO. BD 495 060
2011-11-04 Declaration of Jeff M Sturman.wpd  2011-10-17 14:32 JMS                    **PAGE 8**
**DECLARATION OF JEFF M. STURMAN**

43.    Attached to Petitioner's Compendium of Exhibits as **Exhibit "FF"** is a true and correct copy of pages 139 of the Reporter's Transcript of Proceedings from the January 12, 2011 hearing in this case.

44.    On April 29, 2011, Kolodny & Anteau received documents from Jaffe and Clemens.    Attached to Petitioner's Compendium of Exhibits as **Exhibit "GG"** and incorporated herein is a true and correct copy of a portion of the documents that we received that day.

45.    I caused one page of the documents that Kolodny & Anteau received on April 29, 2011 to be magnified and printed.  Attached to Petitioner's Compendium of Exhibits as **Exhibit "HH"** and incorporated herein is a true and correct copy of a that page.

**Breach of Fiduciary Duty Number 8 - Respondent's Failure To Disclose**
**The Source Of His Support Payments**

46.    On December 9, 2011, I received Respondent's Responsive Declaration to Petitioner's then pending Order to Show Cause.  Attached to Petitioner's Compendium of Exhibits as **Exhibit "II"** and incorporated herein are true and correct copies of the following portions of that Responsive Declaration: (a)  the face page of the Responsive Declaration, (b) pages 2 and 3 of the Memorandum of Points and Authorities which I redacted, (c) pages 1, 7, 10 and 15 of the Declaration of Joseph S. Sweeney, CPA, dated December 9, 2010, which I have redacted, (d) Schedule 6 to the Declaration of Joseph S. Sweeney, CPA, which I have redacted, and, (e) pages 1, 11, 12 and 40 of the Declaration of Saeed "Steve" Cohen dated December 9, 2011, which I have redacted.

47.    On May 17, 2011, I received Respondent's Motion to Vacate and Enter New Support Orders, for New Trial, for Reconsideration and/or for Modification.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

48.     On June 20, 2011, I received Respondent's Reply in connection with his Motion to Vacate and Enter New Support Orders, for New Trial, for Reconsideration and/or for Modification.    Attached to Petitioner's Compendium of Exhibits as **Exhibit "JJ"** and incorporated herein are true and correct copies of the face page of that Reply, as well as pages 1, 8, 9 and 16 of the Declaration of Rosemarie Reed, CPA/CFF, dated June 20, 2011.

49.     On June 27, 2011, I was in Court for a hearing on Respondent's Motion to Vacate and Enter New Support Orders, for New Trial, for Reconsideration and/or for Modification. Attached to Petitioner's Compendium of Exhibits as **Exhibit "KK"** are true and correct copies of pages 50, 51, 61 and 62 of the Reporter's Transcript of the June 27, 2011 Proceedings.

**Breach of Fiduciary Duty Number 9 - Respondent's Failure To Disclose**
**The Amount Of Professional Fees That He Incurred And Paid**

50.     On May 17, 2011, I received Respondent's Motion to Vacate and Enter New Support Orders, for New Trial, for Reconsideration and/or for Modification.

51.     On May 17, 2011, I received an Income and Expense Declaration from Jaffe and Clemens. Attached to Petitioner's Compendium of Exhibits as **Exhibit "LL"** is a true and correct copy of portions of that Income and Expense Declaration.

52.     On June 14, 2011, I caused Petitioner's Income and Expense Declaration to be filed. Attached to Petitioner's Compendium of Exhibits as **Exhibit "MM"** is a true and correct copy of portions of that Income and Expense Declaration.

53.     On October 6, 2011, I caused a Deposition Subpoena for Production of Business Records to be issued to the Custodian of Records for Taylor and Lieberman. Attached to Petitioner's Compendium of Exhibits as **Exhibit "NN"** is a true and correct copy of portions of that Deposition Subpoena.

/ / / / /
/ / / / /
/ / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1     54.    On November 1, 2011, I received documents pursuant to that Deposition

2 Subpoena. Attached to Petitioner's Compendium of Exhibits as **Exhibit "OO"** are true and

3 correct copies of Declaration of the Deposition Officer, as well as the documents received

4 in response to the Deposition Subpoena to Taylor and Lieberman.

5     55.    On October 6, 2011, I caused a Deposition Subpoena for Production of

6 Business Records to be issued to the Custodian of Records for Gursey Schneider & Co.

7 Attached to Petitioner's Compendium of Exhibits as **Exhibit "PP"** is a true and correct copy

8 of portions of that Deposition Subpoena.

9     56.    On November 1, 2011, I received documents pursuant to that Deposition

10 Subpoena. Attached to Petitioner's Compendium of Exhibits as **Exhibit "QQ"** are true and

11 correct copies of Declaration of the Deposition Officer, as well as a portion of the documents

12 received in response to the Deposition Subpoena to Gursey Schneider & Co.

13

14 **Breach of Fiduciary Duty Number 10 - Respondent's Failure To Disclose**

15 **The Documents Supporting The Adjustments Shown On His Tax**

16 **Accountant's Workpapers**

17     57.    On May 20, 2011, I received a letter and a computer disk from Jaffe and

18 Clemens. Attached to Petitioner's Compendium of Exhibits as **Exhibit "RR"** is a true and

19 correct copies of the letter that I received.

20     58.    On June 14, 2011, I caused Petitioner's Responsive Declaration to

21 Respondent's Motion to Vacate and Enter New Support Orders, for New Trial, for

22 Reconsideration and/or for Modification. Attached to Petitioner's Compendium of Exhibits

23 as **Exhibit "SS"** are true and correct copies of a portion of the Declaration of William

24 Duerksen, CPA/ABV, dated June 14, 2011 which was attached to that Responsive

25 Declaration, as well as Exhibits "KKK" and "LLL" thereto.

26     59.    On August 11, 2011, I caused a letter to be sent, via fax, and email to

27 Respondent's attorney, Bruce Clemens. Attached to Petitioner's Compendium of Exhibits

28 as **Exhibit "TT"** is a true and correct copy of that letter.

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN                  CASE NO. BD 495 060
2011-11-04 Declaration of Jeff M Sturman.wpd  2011-10-17 14:32 JMS          **PAGE 11**
**DECLARATION OF JEFF M. STURMAN**

1    60.    On August 18, 2011, I caused a letter to be sent, via fax, and email to

2    Respondent's attorney, Bruce Clemens. Attached to Petitioner's Compendium of Exhibits

3    as **Exhibit "UU"** is a true and correct copy of that letter. [I am not attaching the Exhibits

4    referred to in the letter because they are Exhibits "KKK" and "LLL" to the Responsive

5    Declaration that Petitioner filed on June 14, 2011, and both of those Exhibits are attached

6    as part of Exhibit "SS" to Petitioner's Compendium of Exhibits.]

7    61.    On August 19, 2011, I caused Petitioner's Seventh Demand to Respondent for

8    the Production of Documents for Inspection and Copying to be served at Jaffe and Clemens.

9    Attached to Petitioner's Compendium of Exhibits as **Exhibit "VV"** is a true and correct copy

10   of that letter.

11   62.    On August 25, 2011, I received a letter from David Farkas at Jaffe and

12   Clemens which said, in part "[Respondent] will make the documents available for inspection

13   tomorrow, August 26, 2011, beginning at 9:30 a.m. at Data Discovery Solutions, located at

14   318 West Ninth Street, Los Angeles, California 90015. . . ." Attached to Petitioner's

15   Compendium of Exhibits as **Exhibit "WW"** is a true and correct copy of that letter.

16   63.    On August 30, 2011, I caused a Notice of Taking Deposition of Respondent

17   Saeed Cohen to be served at Jaffe and Clemens. Attached to Petitioner's Compendium of

18   Exhibits as **Exhibit "XX"** and incorporated herein is a true and correct copy of that Notice

19   of Taking Deposition. I noticed Respondent's deposition to take place at Discovery Data

20   Solutions so that I could ask him questions about the organization and location of documents

21   that his attorneys told me that he produced there.

22   64.    On September 7, 2011, I represented Petitioner at a telephonic hearing before

23   the Honorable John W. Ouderkirk, Judge *Pro Tempore* regarding discovery, concerning an

24   *ex parte* application that Petitioner made. Attached to Petitioner's Compendium of Exhibits

25   as **Exhibit "YY"** and incorporated herein is a true and correct copy of Notice of Motion form,

26   the Application for Order form and the Attachment "9" to Form FL-310 that were part of that

27   *ex parte* application. I am not attaching the entirety of that *ex parte* application as an Exhibit.

28   / / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1      65.    On September 7, 2011, I received Respondent's Responsive Declaration to

2 Petitioner's *ex parte* application. Attached to Petitioner's Compendium of Exhibits as

3 **Exhibit "ZZ"** and incorporated herein is a true and correct copy of the Responsive

4 Declaration form and a portion of the Declaration of Bruce A. Clemens that was attached to

5 it. I am not attaching the entirety of the Responsive Declaration as an Exhibit.

6      66.    On October 21, 2011, I received Respondent's written response to Petitioner's

7 Seventh Demand to Respondent for the Production of Documents for Inspection and

8 Copying. Attached to Petitioner's Compendium of Exhibits as **Exhibit "AAA"** are true and

9 correct copies of pages 1, 5-10, 295 and 296 of that written response. I caused that written

10 response to be reviewed and determined that Respondent's written responses to requests

11 8-139, 205-315, and 340-420 stated that "Respondent has complied with this request, and

12 all documents in Respondent's possession, custody or control responsive to this request

13 have been made available to Petitioner for inspection since August 26, 2011, at the

14 Discovery Data Solutions repository . . .," or words to that effect  No information was

15 provided to identify the documents which are responsive to categories 8-139, 205-315, and

16 340-420 in the document demand.

17      67.    On October 28, 2011, I caused a letter to be sent, via email and fax, to

18 Respondent's attorney. Attached to Petitioner's Compendium of Exhibits as **Exhibit "BBB"**

19 and incorporated herein is a true and correct copy of the letter that I sent.

20      68.    On November 9, 2011, I received a letter from Respondent's attorney.

21 Attached to Petitioner's Compendium of Exhibits as **Exhibit "CCC"** and incorporated herein

22 is a true and correct copy of the letter that I received.

23      69.    On November 9, 2011, I caused a letter to be sent, via email and fax, to

24 Respondent's attorney. Attached to Petitioner's Compendium of Exhibits as **Exhibit "DDD"**

25 and incorporated herein is a true and correct copy of the letter that I sent.

26      70.    I am an attorney duly licensed to practice law in all the Courts of the State of

27 California, in good standing before the State Bar of California; I am a partner of Kolodny &

28 Anteau, attorney of record for the Petitioner in this matter.

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN                          CASE NO. BD 495 060
2011-11-04 Declaration of Jeff M Sturman.wpd  2011-10-17 14:32 JMS           **PAGE 13**
**DECLARATION OF JEFF M. STURMAN**

1   71.   This Declaration is based upon facts within my own personal knowledge or

2   from the contents of documents referred to herein.

3   72.   This Declaration is not intended to be, nor should it be construed as being, a

4   waiver of any attorney-client privilege or attorney work product doctrine.  The matters set

5   forth herein were stated and/or observed in non-privileged settings and are not the result of

6   privileged work product matters.  I have no client authority to waive the attorney-client

7   privilege nor the attorney work product doctrine and I do not intend to do so by anything set

8   forth herein.

9

10   I declare, under penalty of perjury pursuant to the laws of the State of California, that

11   the foregoing is true and correct.

12   Executed this ___ day of November, 2011.

13

14

15   JEFF M. STURMAN

16

17

18

19

20

21

22

23

24

25

26

27

28

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

Declaration of
James A. Dooley

## DECLARATION OF JAMES A. DOOLEY

I, JAMES A. DOOLEY, declare as follows:

1.  I make and submit this Declaration in connection with Petitioner's Motion for Breach of Fiduciary Duty.  This Declaration shall relate only to the aforementioned matter.

2.  I am one of the attorneys at Kolodny & Anteau who represents Petitioner, Fariba Cohen.

3.  On November 5, 2010, I caused Petitioner's Declaration of Disclosure, including her Income and Expense Declaration and her Schedule of Assets and Debts to be served at Jaffe and Clemens, Respondent's attorney. I also caused a Declaration Regarding Declaration of Service of Declaration of Disclosure and Income and Expense Declaration to be filed.   Attached to Petitioner's Compendium of Exhibits as **Exhibit "EEE"** and incorporated herein is a true and correct copy of the Declaration of Service of Declaration of Disclosure and Income and Expense Declaration that I caused to be filed.

4.  I am an attorney duly licensed to practice law in the State of California, in good standing before the State Bar of California; I am an associate of Kolodny & Anteau, attorney of record for the Petitioner in this matter.

5.  This Declaration is based upon facts within my own personal knowledge or from the contents of documents referred to herein.

6.  This Declaration is not intended to be, nor should it be construed as being, a waiver of any attorney-client privilege or attorney work product doctrine.  The matters set forth herein were stated and/or observed in non-privileged settings and are not the result of

/ / / / /
/ / / / /
/ / / / /
/ / / / /
/ / / / /
/ / / / /

KOLODNY & ANTEAU
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

1  privileged work product matters. I have no client authority to waive the attorney-client

2  privilege nor the attorney work product doctrine and I do not intend to do so by anything set

3  forth herein.

4

5      I declare, under penalty of perjury pursuant to the laws of the State of California, that

6  the foregoing is true and correct.

7      Executed this 16th day of November, 2011.

8

9                                   JAMES A. DOOLEY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KOLODNY & ANTEAU**
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918

IN RE THE MARRIAGE OF COHEN                   CASE NO. BD 495 060
2011-11-16 Declaration of JAD.wpd  2011-11-16 11:47 JMS            PAGE 2
**DECLARATION OF JAMES A. DOOLEY**

## DECLARATION OF WILLIAM A. DUERKSEN, CPA/ABV, CFE

I, WILLIAM A. DUERKSEN, CPA/ABV, CFE declare as follows:

1. I am a shareholder in the accounting firm, Mayer Hoffman McCann P.C. ("MHM") I make and submit this Declaration in connection with Ms. Cohen's Motion for Breach of Fiduciary Duty. The facts set forth herein are of my personal knowledge and I would competently testify thereto.

2. In September 2010, MHM was retained to perform forensic accounting services for Petitioner, Fariba Cohen. Those services include, but are not limited to, determining both parties' incomes, calculating guideline child support, determining the extent and value of the parties' community and separate assets, determining the amount of claims for credit and reimbursement, and determining each parties' ability to pay attorney's fees and costs. I have been responsible for managing the documents received in this case and also in assisting Mark S. Luttrell, the lead forensic accountant in this case, in analyzing those documents.

3. Scope of Assignment. At the request of Jeff M. Sturman, a partner at Kolodny & Anteau, I prepared this declaration to describe: 1) the documents that MHM has had available when it has provided services to Petitioner, 2) the documents that MHM did not have available when it provided services to Petitioner, 3) the documents that were produced by Mr. Cohen after we submitted declarations, after Mr. Luttrell was deposed and/or after we appeared in Court to testify, and 4) the documents or information that we still do not have.

4. Tax Issues. In September 2010, the month that MHM was retained, we reviewed Ms. Cohen's Order to Show Cause for child support, spousal support, and attorney's fees and costs which was filed July 8, 2010; her

IN RE THE MARRIAGE OF COHEN                                    CASE NO. BD 495 060
                                                                              PAGE 1

1   Income and Expense Declaration which was filed July 8, 2010; Mr. Cohen's

2   Responsive Declaration dated July 22, 2010; his Income and Expense

3   Declaration dated July 22, 2010; and a partial transcript of an August 2, 2010

4   hearing. In Mr. Cohen's Income and Expense Declaration, he stated that

5   there were unreported foreign accounts and that he was going to voluntarily

6   disclose to the IRS. Therefore, in my opinion, the tax returns received from

7   Mr. Cohen could not be relied upon unless we received other documents or

8   information that would allow us to confirm their accuracy.

9   5. Documents Produced In September 2010. In September 2010 I, and other

10   members of my firm, started reviewing approximately 90,000 pages of

11   documents that MHM received from Kolodny & Anteau and that Mr. Sturman

12   told me were produced in response to Ms. Cohen's Demand for Production

13   and Inspection of Documents [Set One]. Those documents included: (a) Ms.

14   Cohen's and Mr. Cohen's joint individual income tax returns for the years

15   2005, 2006, 2007 and 2008, (b) corporate income tax returns for AMP Plus,

16   Inc., dba Elco Lighting (AMP Plus) for the years 2004, 2005, 2006, 2007, and

17   2008, (c) tens of thousands of pages of general ledgers for AMP Plus' that

18   were in WordPad format that we imported into Excel to make the information

19   useable, and, (d) other documents, e.g., tax returns for other entities. We did

20   not receive documents that would allow us to determine whether the

21   information in the general ledgers of AMP Plus or its tax returns were

22   accurate. For example, we did not receive invoices from AMP Plus' vendors,

23   invoices to AMP Plus' customers, inventory records, a cash receipts and

24   disbursements journal (or some other kind of check register), and many other

25   types of basic accounting documents and records. Nonetheless, in

26   September 2010 and October 2010, MHM spent most of its time reviewing

27   the approximately 90,000 pages of documents so that we could analyze those

28   and prepare a declaration to be filed on October 21, 2010, 16 Court Days

IN RE THE MARRIAGE OF COHEN                          CASE NO. BD 495 060
                                                                    PAGE 2

1    before the November 15, 2010 hearing on Ms. Cohen's Order to Show

2    Cause.

3  6.  <u>Mr. Cohen's Schedule of Assets and Debts</u>.  On September 24, 2010, I also

4    received and reviewed Mr. Cohen's Schedule of Assets and Debts dated

5    September 15, 2010.  That Schedule listed 17 foreign bank accounts, with

6    total balances of $45,926,517, and it stated that some of those accounts were

7    held in the names of non-operational foreign entities that were formed for the

8    sole purpose of holding such foreign bank accounts.  One of those entities is

9    known as Seohyun International, Ltd. ("Seohyun Ltd."), and Mr. Cohen's

10    Schedule of Assets and Debts stated that it held accounts at Mega

11    International Bank and at Shanghai Commercial Bank.  As described in

12    paragraph 19 below, the account statements for Seohyun Ltd. were critical

13    documents that we needed to analyze AMP Plus' unreported net income, but

14    these documents were not produced until after Mr. Luttrell's deposition on

15    December 21, 2010.

16  7.  <u>Tax Returns Received In October 2010</u>.  In October 2010, MHM received a

17    copy of an October 4, 2010 letter from Jaffe and Clemens, attorneys for Mr.

18    Cohen.  That letter stated that Ms. Cohen would need the documents sent

19    with it to file her own 2009 tax return.  For example, a copy of a 2009 K-1

20    from AMP Plus' was provided with the October 4, 2010 letter.  At that time, we

21    had not been provided with the 2009 income tax return for AMP Plus' [with

22    the exception of the Schedule K-1] and also did not have sufficient time or

23    information to determine whether the income tax documents accurately

24    reported income (Ms. Cohen's year 2009 income tax return was due 11 days

25    later).  On October 14, 2010, the day before Ms. Cohen's 2009 tax return was

26    due, MHM received a copy of Mr. Cohen's year 2009 individual income tax

27    return.  However, we did not know whether that document was accurate.  As

28    discussed in detail in paragraphs 15 through 17 below, Mr. Cohen later

IN RE THE MARRIAGE OF COHEN                    CASE NO. BD 495 060

1  provided draft amended tax returns for the 2009 year on April 15, 2011, after

2  the support hearing in January 2011, which showed that the parties' income

3  on their 2009 returns was understated by almost $1 million.

4  8.  MHM's October 2010 Declaration.  In October 2010, I assisted Mr. Luttrell in

5  preparing a declaration which set forth our opinions about Ms. Cohen's and

6  Mr. Cohen's respective incomes and the assets available to pay attorney's

7  fees, accountant's fees and costs.  At that time, MHM had not received

8  documents which we needed to determine whether the 2009 individual and

9  business tax returns received from Mr. Cohen were correct.  The documents

10  that we had not received included documents showing AMP Plus' receivables

11  (e.g., invoices sent to customers and ledgers or other documents showing

12  amounts owed by customers), documents showing AMP Plus' payables (e.g.,

13  invoices received from AMP Plus' vendors and ledgers of other documents

14  showing AMP Plus' payables), documents showing AMP Plus' inventory (e.g.,

15  purchases journal or  inventory reports), and cash receipts and

16  disbursements journals or some other kind of check register.  Additionally, we

17  had not received bank account statements for several banks listed on Mr.

18  Cohen's September 15, 2010 Schedule of Assets and Debts, including

19  statements for the Mega International and Shanghai Commercial Bank

20  accounts.  I wanted to receive bank statements for those accounts because

21  bank statements received from Mr. Cohen for other accounts (e.g., Bank

22  Leumi) reflected tens of millions of dollars of transfers to and from accounts in

23  the name of Seohyun International, Ltd., but we were unable to entirely

24  determine the extent of such transfers without that entities' bank statements.

25  9.  Mr. Cohen's Deposition.  On November 16, 2010 and November 17, 2010, I

26  was at Kolodny & Anteau when Mr. Sturman deposed Mr. Cohen, and I heard

27  Mr. Cohen testify that he had not reported foreign bank accounts on tax

28

IN RE THE MARRIAGE OF COHEN                        CASE NO. BD 495 060
                                                              PAGE 4

1    returns in order to avoid paying income taxes.[1]   Additionally, I heard Mr.

2    Cohen testify that he caused AMP Plus' inventory to be inaccurately reported

3    on its 2008 tax returns in order to reduce the business' taxable income.[2]   At

4    that time, MHM had not received documents from Mr. Cohen that would allow

5    us to determine the amount by which the inventory was misstated, what the

6    correct amounts of inventory were, and the extent to which misstatements of

7    inventory affected AMP Plus' income.   The documents provided by Mr. Cohen

8    showed that AMP Plus' inventory was misstated because the beginning

9    inventory on AMP Plus' year 2009 tax return was $1,640,709 higher than the

10   ending inventory shown on AMP Plus' year 2008 tax return.   However, we

11   had no documents to verify the correct amount of inventory adjustments.

12   10. MHM's November 2010 Declaration.   In November 2010, I assisted Mr.

13   Luttrell in preparing a declaration setting forth our opinions about Ms. Cohen's

14   and Mr. Cohen's respective income and liquid assets available to pay

15   attorney's fees, accountant's fees and costs.   That declaration supplemented

16   Mr. Luttrell's October 21, 2010 declaration, primarily by using additional

17   information obtained at Mr. Cohen's deposition.   However, we still had not

18   received supporting documents from Mr. Cohen showing AMP Plus' 2010

19   year-to-date income, AMP Plus' accounts receivable, AMP Plus' accounts

20   payable, and AMP Plus' inventory.   Additionally, we still had not received

21   Mega International and Shanghai Commercial Bank account statements from

22   Mr. Cohen.

23   11. MHM's December 2010 Declaration.   In December 2010, I assisted Mr.

24   Luttrell in preparing a declaration setting forth our opinions about Ms. Cohen's

25   and Mr. Cohen's respective income available for support and liquid assets

26   available to pay attorney's fees and costs.   That declaration was prepared in

27

28   [1] Deposition of Saeed Cohen dated November 17, 2010, page 233, lines 11 - 22
[2] Deposition of Saeed Cohen dated November 17, 2010, page 320, lines 7 – 25; page 321, lines 1 – 6

1    reply to Mr. Cohen's Responsive Declaration dated December 9, 2010. At

2    the time of Mr. Luttrell's declaration, MHM still had not received supporting

3    documents from Mr. Cohen showing AMP Plus' 2010 year-to-date income,

4    AMP Plus' accounts receivable, AMP Plus' accounts payable, and AMP Plus'

5    inventory. Additionally, we still had not received Mega International and

6    Shanghai Commercial Bank account statements. Due to the fact that we did

7    not have current income information for AMP Plus', we made support

8    calculations based on year 2009 tax returns received from Mr. Cohen since

9    he stated that his 2009 tax returns were accurate at page 10, line 23 of his

10    December 9, 2010 declaration. [Because Mr. Cohen was in the process of

11    voluntarily disclosing unreported income, we also believed that he had

12    attempted to be more accurate in preparing his 2009 tax return than he had

13    been during prior years.]

14    12. Mr. Luttrell's December 2010 Deposition. In December 2010, Mr. Luttrell and

15    I reviewed documents in preparation for his deposition on December 21,

16    2010. On December 22, 2010, the day after Mr. Luttrell's deposition, MHM

17    received many of the Mega International and Shanghai Commercial Bank

18    account statements [a portion of which he received at that deposition] that

19    previously had not been produced.

20    13. The January 2011 Support Hearing. On January 12, 2011, Mr. Cohen

21    testified that the profit and loss of AMP Plus for 2010 was not final.[3]

22    Additionally, Judge Nelson stated that she was going to make support Orders

23    based on MHM's guideline support calculation and Mr. Luttrell's testimony[4]

24    which, in turn, was based on the 2009 tax returns that Mr. Cohen had stated

25    in his declaration dated December 9, 2010, at page 10, lines 1 and 23, were

26    accurate. As of January 12, 2011, we did not have sufficient documents or

27

28

[3] Reporter's Transcript dated January 12, 2011, page 138, lines 24 – 28

[4] Reporter's Transcript dated January 12, 2011, page 119, lines 19 – 28; page 120, lines 1 – 7

IN RE THE MARRIAGE OF COHEN                          CASE NO. BD 495 060
                                                                          PAGE 6

1    information to allow us to determine whether the year 2009 tax returns from

2    Mr. Cohen were, or were not, accurate and relied on the representations of

3    Mr. Cohen in that regard.  As discussed more fully below, we learned after the

4    hearing that Mr. Cohen amended those returns, reflecting that income was

5    understated by $981,701.

6    14. AMP Plus' Amended Tax Returns.  On March 23, 2011, my firm received a

7    copy of a letter from Jaffe and Clemens, as well as draft amended tax returns

8    for AMP Plus' for 2003 through 2009.  We compared those draft amended tax

9    returns to the 2003 through 2009 tax returns that we received for AMP Plus in

10   September 2010.  In total, those draft amended tax returns for AMP Plus

11   reflected $47,692,770 of additional, previously unreported income, primarily

12   related to overstatements in AMP Plus' purchases of goods and unreported

13   money transferred to it by vendors.  At that time, we did not have documents

14   to determine whether those draft amended tax returns were accurate

15   because, for example, we did not have invoices from AMP Plus' vendors,

16   AMP Plus' inventory documents, complete accounting books of entry for AMP

17   Plus (i.e., ledgers and journals) and other relevant accounting documents.

18   15. Individual Income Tax Returns.  On April 15, 2011, my firm received a copy of

19   a letter from Jaffe and Clemens, as well as draft amended individual tax

20   returns for Ms. Cohen and Mr. Cohen for 2003 through 2008 [the years that

21   they filed joint returns] and a draft amended individual tax return for Mr.

22   Cohen for 2009.  We compared those draft amended individual tax returns to

23   the originally-filed 2003 through 2009 tax returns.  On a combined basis,

24   those draft amended individual income tax returns reflected $55.3 million of

25   additional, previously unreported income for the parties which was mostly

26   attributable to the adjustments made on the AMP Plus' draft amended tax

27   returns that were received about three weeks earlier.  At that time, we did not

28   have documents to determine whether those draft amended individual tax

IN RE THE MARRIAGE OF COHEN                           CASE NO. BD 495 060
                                                                    PAGE 7

1    returns were accurate because most of the adjustments were based on AMP

2    Plus' amended tax returns and we did not have sufficient documents to

3    determine whether those draft tax returns were accurate.

4    16. Mr. Cohen's Motion to Vacate or to Modify the Court's Support Orders. On or

5    about May 17, 2011, we received a copy of Mr. Cohen's Motion to Vacate and

6    enter a new support Order, for a new trial, for reconsideration, to reopen

7    evidence and/or to modify the existing support Order. In the declaration of

8    Saeed Cohen dated May 13, 2011, at page 62, lines 23-28, Mr. Cohen stated

9    that he had determined that AMP Plus' year 2009 income tax return

10   understated its income by approximately $1 million. At that time, we did not

11   have sufficient documents or information available to determine whether that

12   almost $1 million adjustment was correct. Upon reviewing Mr. Cohen's

13   declaration, MHM calculated guideline support using the amount of income

14   set forth in the amended year 2009 tax returns and we determined that total

15   combined guideline child and spousal support was $324,646 based on that

16   information as set forth on page 11, Table 5, of Mr. Luttrell's declaration dated

17   June 14, 2011. Using that support calculation, I determined MHM's prior

18   calculation of support and the Court's support Orders were $55,652 less per

19   month, on a combined basis, than they would have been if we had known

20   about the additional, previously unreported $981,701 of income.

21   17. Additional Amended Tax Returns. On or about May 20, 2011, MHM received

22   a copy of a letter from Jaffe and Clemens, additional draft amended tax

23   returns for AMP Plus, additional joint amended tax returns for the parties, and

24   workpapers from Gary Howard, CPA, the accountant who prepared the draft

25   amended tax returns. I reviewed these draft amended tax returns, and Mr.

26   Howard's working papers. However, I was unable to determine whether the

27   draft amended tax returns received in May 2011 were accurate because

28   almost all of the adjustments shown on Mr. Howard's working papers were

IN RE THE MARRIAGE OF COHEN                          CASE NO. BD 495 060
                                                                    PAGE 8

1      made "per Steve," referring to Mr. Cohen, and I did not know the basis, if any,

2      that Mr. Cohen had for telling Mr. Howard to make the approximately $47.7

3      million of adjustments shown on the amended tax returns.  [I later telephoned

4      Mr. Howard who told me that he asked Mr. Cohen to provide him with

5      documents to verify the adjustments, such as purchase invoices, however,

6      Mr. Cohen did not provide him with any such documents.]

7  18. Mr. Cohen's Production of Documents in August 2011.  According to Mr.

8      Sturman, on August 26, 2011, Mr. Cohen produced boxes of documents at a

9      facility called DDS which is located in downtown Los Angeles.  Starting on

10      August 29, 2011, other accountants from MHM and I went to a document

11      storage facility, DDS, and started to review those documents.  I also obtained

12      an estimate of the number of pages contained in the 269 boxes from DDS,

13      which also has a copying service.  According to DDS, the boxes contained

14      about 1.2 million pages.  Other accountants from MHM and I have been at

15      DDS about 17 days since August 29, 2011.  We have conducted a general

16      review of all of the boxes.  However, we have ceased our review of the

17      documents maintained at DDS since we have not been provided with all the

18      subsidiary ledgers and journals, banking documents, vendor invoices and

19      sales invoices of AMP Plus, as discussed in further detail in paragraph 20

20      below.  These missing documents are needed in order for us to analyze the

21      accuracy of the figures set forth on the income tax returns and financial

22      statements of AMP Plus by comparing source documents to the reported

23      amounts.

24  19. Documents Produced on August 26, 2011.  Based on our review so far, the

25      approximately 1.2 million pages of documents that Mr. Cohen delivered to

26      DDS included copies of invoices that AMP Plus' received from vendors,

27      copies purchase orders from customers, copies of inventory records, and

28      many other types of documents we need to verify the accuracy of the general

IN RE THE MARRIAGE OF COHEN                        CASE NO. BD 495 060

1    ledgers that we received, the accuracy of original tax returns, the accuracy of

2    amended tax returns, the accuracy of Mr. Cohen's representations about

3    income, to value AMP Plus, and to determine the extent of claims for credits

4    and reimbursements, among other things. We also needed these documents

5    when we were preparing Mr. Luttrell's October 21, 2010, November 30, 2010

6    and December 16, 2010 declarations. However, they were not received until

7    August 2011. As an example of the way in which these documents affect our

8    analysis, they showed us how tens of millions of dollars were accumulated in

9    foreign accounts using AMP Plus as follows:

10    a. Based on my review of the vendor invoices produced on August 26,

11    2011, we identified over 675 transactions that had at least two almost

12    identical invoices for the same purchase by AMP Plus (**Exhibit FFF**).

13    The invoices were identical except for the unit cost of the product and

14    total cost of the product (See **Exhibit GGG** and **HHH** as an example).

15    b. For some of these almost duplicate invoices, the amount shown on the

16    higher price invoice was transferred to accounts in the name of

17    Seohyun International, Ltd. and Seohyun International Ltd. then paid

18    out the amount shown on the invoice with the lower price to the third

19    party vendor. The difference remained in Seohyun Ltd's accounts until

20    it was transferred out to other foreign accounts.

21    c. For others of these duplicate invoices, the amount shown on the higher

22    price invoice was paid directly to a third party vendor who then

23    transferred the difference between the amounts listed on the higher

24    and lower invoices into accounts in the name of Seohyun International,

25    Ltd. This difference remained in Seohyun Ltd's accounts until it was

26    transferred out to other foreign accounts. Importantly, after October

27    2008, the month when the Petition for Dissolution of Marriage was

28    filed, the account statements no longer showed deposits from vendors

IN RE THE MARRIAGE OF COHEN                    CASE NO. BD 495 060
                                               PAGE 10

1       even though we have duplicate invoices from such vendors after

2       October 2008 that total about $650,000 (**Exhibit III**).  In addition, we

3       have invoices after October 2008 where we are missing either the

4       higher or lower duplicate invoice.  If we impute the other duplicate

5       amount consistent with the prior history of inflating the prices, there is

6       approximately an additional $90,000 in deposits also not shown on the

7       account statements (**Exhibit JJJ**).  Accordingly, if those third party

8       vendors continued to transfer money back to accounts controlled by

9       Mr. Cohen, then it was to accounts for which we have not been

10      provided information.  We will need to obtain documents from the third

11      party vendors to determine whether they made such transfers, the

12      amounts of such transfers and the accounts to which the transfers

13      were made.

14   d.  In certain instances, we reviewed purchase invoices that were paid

15      and deducted twice by AMP Plus (**Exhibit KKK**).

16   e.  Of particular importance, our review of these documents over the past

17      few months revealed that almost all of the $47.7 million in adjustments

18      set forth in the draft amended tax returns of AMP Plus involved

19      transactions that went through Mega International and Shanghai

20      Commercial Bank account statements; statements that were not

21      produced by Mr. Cohen until after Mr. Luttrell's deposition on

22      December 21, 2010.

23  20. Documents produced after August 26, 2011 or still not produced.  Although

24      we received about 1.2 million pages of documents in August 2011, numerous

25      documents still have not been provided.  These documents include year 2011

26      bank statements for Mr. Cohen and AMP Plus as well as the electronic files

27      containing subsidiary ledgers and journals of AMP Plus that were just

28      produced on September 26, 2011.  AMP Plus uses accounting software

IN RE THE MARRIAGE OF COHEN                              CASE NO. BD 495 060
                                                              PAGE 11

1    published by the company ACCPAC ™. According to the ACCPAC ™

2    computer consultant retained by Kolodony & Anteau on behalf of Ms. Cohen,

3    Mr. Cohen did not produce a complete copy of the ACCPAC™ accounting

4    records including directories and/or electronic files referred to as CashBook,

5    Report Writer, Report Master Program and Quote Master and therefore we

6    cannot print certain accounting reports which are requested by us to complete

7    our analysis. Based on my firm's review of the 1.2 million pages of

8    documents, which is ongoing, we are missing virtually all sales invoices to

9    customers as well as a number of vendor invoices and wire transfer

10    documents have not been provided, which are summarized on **Exhibit LLL**

11    **and MMM.** We have not completed our review of the documents and it is

12    possible that some of the documents I have identified as missing are

13    contained within the 1.2 million page population. In addition, our office

14    received over 3,700 pages of documents yesterday that I have not had the

15    opportunity to review as of the date of this declaration. It has been extremely

16    difficult to locate every single document since Mr. Cohen did not segregate

17    the documents relevant to the adjustments made in the proposed amended

18    income tax returns. Finally, we still do not know all of the documents, if any

19    that Mr. Cohen relied upon when instructing Mr. Howard to make about $47.7

20    million of adjustments reflected on the draft amended tax returns that we

21    received in May 2011 since he did not segregate those documents.

22    21. Lack of Critical Documents Needed. During the 11 month period from

23    September 23, 2010 through August 26, 2011, my firm's work has included

24    analyzing Saeed Cohen's gross income available for spousal and child

25    support, analyzing income from AMP Plus, reviewing amended tax returns

26    and workpapers for AMP Plus and the parties, in addition to conducting an

27    extensive analysis of what were apparent improprieties in the reported profits

28    of AMP (based on our review and tracing of amounts in the bank statements

1   and other documents produced as of that time).  As discussed above, the

2   vast majority of documents produced on August 26, 2011 were not produced

3   prior to that date.  As a result, we conducted this analysis with partial

4   accounting documents such as bank statements.  The lack of documents

5   produced by Mr. Cohen, and the significant delays in producing critical

6   documents such as bank account statements for Mega International and

7   Shanghai Commercial Bank (which were produced on December 22, 2010,

8   after Mark Luttrell's 3 declarations and his deposition), purchase documents,

9   shipping documents, inventory records, ledgers and journals, and other

10  source documents has caused my firm to spend an excessive amount of time

11  trying to prepare for the support hearings in this case.  The above facts have

12  put my firm at a disadvantage in completing our work and in a position of

13  trying to figure out what created the alleged $47.7 million of improprieties

14  reported on the income tax returns of AMP Plus (and whether this amount

15  even correctly quantifies all such improprieties) without all of the relevant

16  financial documents, as well as trying to determine the source of funds that

17  generated the $46 million of funds held in offshore accounts as of December

18  31, 2010 (and whether this amount accurately and completely represents all

19  foreign accounts and funds held therein).

20

21  Executed this _16_ day of November 2011.

22                              William A. Duerksen

23                              William A. Duerksen, CPA/ABV, CFE

24

25

26

27

28

IN RE THE MARRIAGE OF COHEN                    CASE NO. BD 495 060
                                               PAGE 13

1                                 PROOF OF SERVICE

2                   DELIVERY TO, AND BY, MESSENGER

3

4  STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

5       I am employed in the county where the service of the hereinbelow described document is to take place. My business address is 9100 Wilshire Boulevard, Ninth Floor,

6  West Tower, Beverly Hills, CA 90212-3425. I am over the age of 18 and not a party to this action.

7

8       On **November 17, 2011**, I caused a copy of the hereinbelow described document to be served on the Respondent in this action and all interested parties by delivering it to a

9  messenger for personal delivery as follows:

10      Bruce A. Clemens, Esq.
          Jaffe And Clemens

11      433 N. Camden Dr., Suite 1000
          Beverly Hills, CA 90210

12

13      The document which is to be so delivered is designated: **MOTION FOR BREACH OF FIDUCIARY DUTY AND SANCTIONS AGAINST RESPONDENT AND ACCOUNTING**.

14      A proof of service by the messenger, evidencing the above delivery, will be filed if

15  applicable.

16

17      I declare, under penalty of perjury pursuant to the laws of the State of California, that the foregoing is true and correct.

18

       Executed this **17th day of November, 2011**, at Beverly Hills, California.

19

20

21      MICHAEL AGUIRRE

22

23

24

25

26

27

28

<div style="text-align: right">**KOLODNY & ANTEAU**
9100 Wilshire Boulevard - Ninth Floor, West Tower
Beverly Hills, California 90212-3425
(310) 271-5533 Fax (310) 271-3918</div>

IN RE THE MARRIAGE OF COHEN                       CASE NO. BD 495 060
2011-11-17 MA POS.676.wpd  2011-10-17 15:26 MA               PAGE 1
**PROOF OF SERVICE - DELIVERY TO, AND BY, MESSENGER**

FORM B104  (08/07)                                                    2007 USBC, Central District of California

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Page 2) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|

| PLAINTIFFS Fariba Cohen | DEFENDANTS Saeed Cohen |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.) Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, 11400 Olympic Boulevard, 9th Floor, Los Angeles, CA 90064-1582 Tel: (310) 478-4100 | ATTORNEYS (If Known) Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067 Tel: (310) 229-1234 |
|---|---|

| PARTY (Check One Box Only) ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin  ☑ Creditor  ☐ Other  ☐ Trustee | PARTY (Check One Box Only) ☑ Debtor  ☐ U.S. Trustee/Bankruptcy Admin  ☐ Creditor  ☐ Other  ☐ Trustee |
|---|---|

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint for exemption to discharge pursuant to 11 U.S.C. § 523(a)(4) as a result of debtor's fraud and defalcation while acting in a fiduciary capacity.

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property -§542 turnover of property
☐ 12-Recovery of money/property -§547 preference
☐ 13-Recovery of money/property -§548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability -§523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability -§523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability -§523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ 50,000,000.00 |

Other Relief Sought

FORM B104 (08/07), page 2                                                      2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| **NAME OF DEBTOR**<br>Saeed Cohen | | **BANKRUPTCY CASE NO.**<br>2:13-bk-26483-N |
| **DISTRICT IN WHICH CASE IS PENDING**<br>Central District of California | **DIVISIONAL OFFICE**<br>Los Angeles | **NAME OF JUDGE**<br>Honorable Neil W. Bason |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)** | | |
| **DATE**<br>9/23/13 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)**<br>Simon Aron, Attorney for Plaintiff | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| *Attorney for Plaintiff* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - _____ DIVISION

| In re: | CASE NO.: |
|---|---|
| | CHAPTER: |
| Debtor(s). | ADVERSARY NUMBER: |
| Plaintiff(s)<br><br>Versus<br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING  [LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| **Hearing Date:** _____ | **Place:** |
|---|---|
| **Time:** _____ | ☐ 255 East Temple Street, Los Angeles, CA 90012 |
| **Courtroom:** _____ | ☐ 3420 Twelfth Street, Riverside, CA 92501 |
| | ☐ 411 West Fourth Street, Santa Ana, CA 92701 |
| | ☐ 1415 State Street, Santa Barbara, CA 93101 |
| | ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    Page 1                          **F 7004-1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS. REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report.  The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
                   Deputy Clerk

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                                      Page 2                              **F 7004-1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____     _____
*Date*              *Printed Name*                                              *Signature*

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.